## Waters Pierce Oil Company v. W. C. Davis et Ux.

### Decided November 30, 1900.

**1. Negligence—Selling Dangerous Merchandise—Vendor's Duty to Give Notice—Privity of Contract.**

The law imposes on the seller of merchandise essentially dangerous to human life, independent of his contract with the buyer, the duty of giving notice to the latter of its dangerous character; and for a neglect of this duty the seller is liable in damages for injury resulting to one not in privity with the contract of sale, and who was an employe of the buyer.

**2. Same—Seller Liable for Acts and Representations of Agent.**

Where a foreign corporation engaged in selling in Texas gas of an unusually dangerous character, had a local agent in general control of its business at the point of sale, and such agent, as a material inducement to the sale of the gas, represented to the buyer thereof that it could be safely stored in a certain place where, by its proximity to a furnace fire, it exploded, such representation, being within the agent's authority, the corporation was bound thereby and liable for an injury caused by such explosion.

**3. Same—Custom Not a Defense.**

The fact that a custom prevailed among other agents of the corporation not to make such representations as to the gas, of which custom the buyer in this instance knew nothing, would not relieve the company of its responsibility, nor could custom change the duty imposed upon it by the common law of notifying the purchaser of the dangerous character of the merchandise.

**4. Same—Proximate Cause.**

Although the proximity of the purchaser's furnace fire and the heat thereof was the immediate cause of the explosion of the gas, yet, as the purchaser had not been informed of its dangerous character, and it was placed near the furnace upon the assurance of the seller's agent making the sale, the proximate cause of the injury occasioned by the explosion was the seller's negligence in failing to give notice of the dangerous qualities of the gas.

**5. Same—Charge Not on Weight of Evidence.**

A charge that it did not matter, as to the defendant company's liability, whether its agent, in making the representations to the purchaser as to the safe use of the gas, believed or did not believe such representations to be true, was not on the weight of evidence.

**6. Same—Evidence—Hearsay.**

In an action for injury caused by an explosion of gas, resulting in the death of an employe engaged in handling it, it was not reversible error to permit a witness to testify that deceased had stated to him that he (deceased) had been told, by some one whose name was not disclosed, that the gas was safe at the point where it was stored, since this tended to show the state of mind of the deceased as to the danger.

**7. Same—Action for Death—Corporation's Liability for Negligence of Agent.**

Where a Missouri corporation engaged in selling an article inherently dangerous to human life, has an agent in charge of its selling business in a Texas town, he is a representative of the corporation for whose wrongful act it may be held liable under the Texas statute giving an action for injuries resulting in death, although he is not a managing officer of the corporation, and was himself ignorant of the dangerous character of the article.

**8. Same—Statutory Regulation—Common Law Liability.**

The liability of a seller of an article dangerous to human life, for negligence in failing to warn the purchaser of its dangerous character, is fixed by the common law, and the right of recovery for injury resulting from such negligence is not affected by the fact that the sale or the manner of delivery of such article is not regulated by the statutes of this State.

**9. Deposition—Failure to Answer Fully.**

Where the answer of the witness, while not as full as it might have been, fairly answered the interrogatory, the failure is not such as to justify the suppression of the entire deposition. See illustration.

**10. Same—Motion to Quash—First Term of Court.**

A motion to suppress a deposition should be filed and determined at the first term of the court after the filing of the deposition.

APPEAL from Navarro. Tried below before Hon. L. B. COBB.

*McKie & Autry,* for appellant.

*Simkins & Mays,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This is a suit by W. C. Davis and wife against the Waters Pierce Oil Company for damages resulting to plaintiffs by reason of the death of their minor son, George Davis, the alleged negligence of defendants being the cause of his death. A trial by jury resulted in a verdict of $158 for expenses of last sickness, etc., and the further sum of $1039.50 for damages resulting from the death, etc., which last sum by the verdict was equally apportioned between the two plaintiffs. The defendant appeals.

*Conclusions of Fact.*—The Waters Pierce Oil Company, during the years 1895 and 1896, was a corporation duly incorporated under the laws of the State of Missouri and having its principal office in St. Louis, in said State. It was engaged in the manufacture and sale of certain products of petroleum oil, including kerosene, benzine, gasoline, etc. It did business in Texas, and one William Grice was its manager, representing it through north and middle Texas. It had an agent by the name of R. O. Pierson residing at Ennis, Texas, to sell its products at said city of Ennis.

In the spring and summer of 1896, E. E. Collins and his wife, Jennie Collins, were the proprietors of and operating a steam laundry in the city of Ennis, Texas, and had in their employ one Earnest Reid as foreman in said business, and one George Davis, a boy of 16 years of age, as their engineer. On the 15th day of June, 1896, the said Waters Pierce Oil Company, by its agent, Pierson, sold to said Collins and wife a drum of 87-degree gasoline, said drum holding about 110 gallons, which drum was placed under a shed in the rear of the yard where said laundry business was being conducted, and about thirty feet from the furnace. This was the second drum purchased by Collins and wife, the first purchase having been made about the 1st of May of that year. When the first drum was received, defendant's agent Pierson was present and assisted in unloading same from the float, and advised Collins where to locate the same, and the same was located in the shed under his directions. He at the time informed Collins and his wife that it would be safe there. The gasoline was drawn from the drum in five-gallon cans once or twice a day and taken to the house for use. It was used to heat the ironing

machinery of the laundry. It was put in a generator located outside the house and the gas generated from it operated the machinery. It was part of the duty of Earnest Reid and George Davis to draw the gasoline from the drum. About 6 o'clock in the evening of the 2d day of July, 1896, said Earnest Reid and George Davis were in the act of drawing gasoline from the said drum, for use in said laundry business, when the gas which had generated in the drum escaped and permeated the atmosphere of the yard and came in contact with the furnace fire, which caused it to explode with a loud noise, seriously injuring George Davis, from which injuries he died two days thereafter. The weather was hot, and the explosion was caused by the gas which escaped from the drum coming in contact with the furnace fire. George Davis, previous to being injured, was of good habits, industrious, energetic, and earning $21 per month. He contributed his entire earnings to his father and mother, the plaintiffs in this case. The gasoline sold by defendant, through its said agent, to said Collins and wife, and which caused said explosion, was what is known as 87-degree gasoline, and is inherently dangerous by reason of its inflammable and explosive character. It is not in general or common use by the public. The defendant knew the dangerous qualities of 87-degree gasoline, but it was not known by defendant's agent, R. O. Pierson. The dangerous character of said gasoline was not known to E. E. Collins nor his wife Jennie, nor by the foreman, E. Reid, nor by the said George Davis. There was no notice given by the defendant company, or its agent Pierson, to said Collins or his wife of the dangerous character of said gasoline when the same was purchased by them. In making the sale, defendant's agent Pierson represented to said E. E. Collins and wife that there was no danger in receiving and placing said drum of gasoline upon their premises under the shed at the place where it was located when the explosion took place. Collins relied upon said statement, and was induced thereby to purchase said drum of gasoline. The defendant company was guilty of negligence in employing as its agent to sell gasoline at Ennis, Texas, a person ignorant of the dangerous qualities of 87-degree gasoline, and in failing to warn E. E. Collins and wife, Jennie Collins, of the dangerous character of 87-degree gasoline, and such negligence was the cause of the injury to George Davis. George Davis was not guilty of contributory negligence, nor did he assume the risk resulting from the handling of said gasoline when he entered the employ of Collins. The plaintiffs are the father and mother of George Davis, and have suffered damage in the amount found by the jury.

*Conclusions of Law.*—Appellant's first, second, and third assignments of error are grouped, and raise the question of the correctness of the ruling of the trial court in overruling the defendants special and general demurrers to plaintiff's petition. The petition alleges that defendant manufactured and sold 87-degree gasoline, the most dangerous grade of gasoline sold in the market, and kept only at certain points in Texas, and requiring great care to prevent explosion;  *  *  *  that R. O.

Pierson was its agent to sell said merchandise, and though it was the duty of the company to employ competent and experienced agents to sell the same and instruct customers as to its dangerous qualities, yet Pierson was wholly ignorant and inexperienced as to said gasoline, and defendant thereby became responsible for any injury to others resulting from the ignorance of said agent while in the course of his employment. That Collins and wife, the owners of the laundry, were ignorant of the peculiar and inflammable nature of said gasoline, and relied on the statements of said Pierson in reference to its safe use. That Pierson, while acting in the actual and apparent scope of his employment, and desiring to effect the sale of said gasoline, induced Collins and wife by false representations of its safety and harmlessness to receive and store said gasoline on their premises, whereby Collins and wife and their employes and the said George Davis were placed in a position of extreme danger and lulled into the belief of security which brought about the injury which resulted in the death of said George Davis. That Collins and wife, the owners of the laundry, and George Davis were ignorant of the peculiar inflammable nature of the gasoline, as the said agent well knew, and relied upon his statement, all of which said agent well knew. It is further alleged that 87-degree gasoline was not commonly used by the public, and that it was the duty of defendant, it knowing the dangerous character of said grade of gasoline, to notify and warn parties purchasing the same from them of the character of said gasoline; and that it was the duty of defendant's agent to notify and warn purchasers of its dangerous qualities.

The main contention of the appellant under the above assignments is, that one who sells an article of merchandise is not responsible for damages to an employe of the purchaser resulting from an improper use of the article sold. It is insisted that in order for plaintiffs to recover it must be shown that a contractual relation existed between the defendant and George Davis. In other words, that while Collins and wife, the purchasers of said gasoline, in case of injury to one of them, might have a cause of action against defendant by reason of their being parties to the contract of sale of the gasoline, yet George Davis not being a party thereto, the plaintiffs can not recover. This position is untenable. It fails to recognize a distinction made in all the cases where the injury is caused by negligence in the sale and use of merchandise not essentially dangerous to human life, and sales of merchandise which is inherently dangerous. In the last class of cases the law imposes a duty, independent of the contract, upon the part of the vendor to give notice to the purchaser of the dangerous qualities of the article sold. As stated in the case decided by the Supreme Court of Massachusetts, "Where a right or duty is created wholly by contract, it can only be enforced between the contracting parties; but where the defendant has violated a duty imposed upon him by the common law, it is but just that he should be held liable to every person injured whose injury is the natural and probable consequence of the misconduct." McDonald v. Snelling, 14 Allen, 290. In a later case decided by the Supreme Court of

Massachusetts, in speaking of the common law liability of the vendor of dangerous merchandise, the following language is used: "It is well settled that a man who delivers an article which he knows to be dangerous or noxious to any person without notice of its nature and qualities, is liable for any injury which may be reasonably contemplated as likely to result therefrom to that person or any other who is not himself in fault." Wellington v. Oil Co., 104 Mass., 67. See also the following authorities: Webb's Pollock on Torts, 29, note; Id., 615, and note; Hadley v. Cross, 34 Vt., 586; Elkins v. McKean, 79 Pa. St., 493; Smith v. Hardware Co., 100 Ga., 163; Hay v. Cohoes Co., 2 N. Y., 159; Heizer v. Manufacturing Co., 15 Law. Rep. Ann., 823; Powers v. Harlow, 53 Mich., 507; Shubert v. Clark Co., 15 Law. Rep. Ann., 818; State v. Fox, 79 Md., 514; 24 Law. Rep. Ann., 682.

The petition in this case expressly charges that 87-degree gasoline was an article possessing dangerous qualities. It was known to defendant. Defendant negligently selected an agent ignorant of the dangerous qualities of this class of merchandise, and the same was sold to Collins and wife without notifying them of its dangerous qualities, and neither they nor the deceased George Davis had any knowledge of said dangerous qualities. There was no error in overruling these demurrers.

Appellant's fourth, fifth, and sixth assignments of error complain of the action of the trial court in refusing certain special charges requested by defendant. These charges relate to the authority of the agent Pierson to bind the defendant. The defendant plead want of authority on the part of its said agent to make the representations in reference to the storing of said gasoline. The contention of appellant under these assignments is that "a corporation can only act by an agent, and his authority is limited to that given him by his principal; his acts beyond such limits are not binding on his principal." The court on this issue charged the jury as follows: "If by the preponderance of the evidence it is shown that Pierson induced Collins to buy the gasoline by representing to him that the same could be safely stored and used at the place it was at the time of the explosion, and that such representations were untrue; that Collins and Davis believed such representations and relied on them as true; that the gas in the drum escaped and was ignited by the fire in the furnace and caused the death of Davis, who was at the time exercising such reasonable care as a person of common prudence would have used under the same circumstances, and that the reason of the escaping gas and its explosion was the highly inflammable nature of said gasoline and its proximity to the furnace fire, and that Collins and Davis were ignorant of such gasoline and the danger of using it so near the fire, you will find for plaintiff. Plaintiff can not recover if the evidence shows that his death was the result, in whole or in part, of his own negligence. If you find that Pierson advised the drawing of gasoline in the morning only, and it was in fact drawn in the evening, and the drawing in the evening was the cause of the explosion, and under the circumstances was negligence, plaintiffs can not recover."

Pierson had authority to sell this merchandise at Ennis, Texas. William Grice, the manager for defendant, testified: "Pierson had general control over the company's business at Ennis. It was his duty to sell our goods there, and do his best to sell them." Collins testified that he would not have purchased the gasoline had not Pierson represented that it could be safely stored in a place where it was stored at the time of the explosion. It was within the apparent authority of Pierson, defendant's agent, to make these representations. When this is the case, the principal is bound. Mechem on Agency, secs. 737, 734; 1 Am. and Eng. Enc. of Law, 2 ed., p. 989; Aultman v. York, 71 Texas, 263; Railway v. Anderson, 82 Texas, 516; Burnett v. Oechsner, 92 Texas, 588.

The general charge of the court fairly presented this phase of the case, and there was no error in refusing the special instructions made the ground of appellant's fourth, fifth, and sixth assignments of error, and they are overruled.

Appellant's seventh assignment of error complains of the action of the court in sustaining the exception of plaintiffs to the testimony of defendant's witness, William Grice, whereby it was proposed to show by said witness that "he was the manager of defendant's business over a large portion of the State of Texas, including 64 subagencies, and he had been manager for many years; that he was familiar with the prevailing custom pertaining to the sale of petroleum products, including gasoline, and that it was not the custom for sellers of gasoline, nor was it the custom of defendant to make any representations to purchasers of the character of the gasoline sold, nor to give any advice or instructions or any other assurance as to any methods of handling or storing such gasoline, nor as to whether or not any suggestive method would be safe." There was no error in sustaining the exception to this testimony. The testimony was not restricted to 87-degree gasoline, but included all petroleum products. It was shown that Collins and wife would not have purchased the gasoline had it not been represented to them by Pierson that the same could be safely stored in the rear of the lot in which the engine was located. Pierson, in order to effect the sale, assured them that it could be safely located at the place where it was in fact subsequently located by him. As before stated, we think this was within the scope of the agent's apparent authority, and the fact that a custom prevailed among other agents of defendant not to make such representations, of which custom neither Collins nor his wife had any knowledge, would not relieve defendant from the responsibility of said representations. Again, custom could not change the duty imposed by common law upon defendant in dealing in merchandise highly dangerous to notify persons purchasing same of its dangerous qualities. The seventh assignment of error is overruled.

Appellant's eighth, ninth, and tenth assignments of error are grouped, and complain of the refusal of certain special charges requested by defendant relating to the question of proximate cause of the injury. The contention by appellant is, that the only act of which it was guilty was

the sale of the gasoline, and that there having intervened another cause, to wit, the will of Collins, the proprietor of the laundry, makes the act of the defendant remote. It is contended that heat, an agency of the commanding proprietor of the laundry, was the direct cause of the explosion. In discussing what character of intervening cause will break the connection, Chief Justice Willie, in the case of Seale v. Railway, 65 Texas, 274, states the rule thus: "If the intervening cause and its probable and reasonable consequence be such as to have been reasonably anticipated by the original wrongdoer, the current authorities seems to be that the connection is not broken." In the case under discussion, defendant was the manufacturer of 87-degree gasoline, one of the most dangerous products of petroleum oil. Defendant knew of the dangerous qualities of this grade of gasoline. It employed a manager who had charge of the business in middle and north Texas. It also employed an agent to sell its products at Ennis, Texas, who was ignorant of the dangerous qualities of 87-degree gasoline. The agent was instrumental in inducing Collins and wife to purchase this grade of gasoline to be used in their laundry. He was not only fully informed of the use which Collins contemplated making of it, but was present when the first drum of gasoline was received, and assisted in its location and advised them of the safety of such location. It was located in the very place where the explosion subsequently occurred. Defendant itself shipped the gasoline on the order of its agent Pierson, to Collins, at Ennis, Texas. It must have known of the uses usually made of this quality of gasoline, and that it was liable to come in contact with heat. We think it clear that the defendant could have anticipated the use to which the gasoline was put by Collins. The proximate cause of the injury was the negligence of defendant in failing to give notice to Collins of the dangerous qualities of 87-degree gasoline, and in employing an agent who was ignorant of its dangerous qualities. Railway v. McKinsey, 78 Texas, 299; Seale v. Railway, 65 Texas, 278; Railway v. Mussett, 86 Texas, 708; Railway v. Kellogg, 94 U. S., 469; McDonald v. Snelling, 14 Allen, 290.

The eleventh and twelfth assignments of error are overruled for the reason set forth in our remarks overruling the first, second, and third assignments.

There was no error in overruling the special charge number 9, requested by defendant and made the ground of his thirteenth assignment of error. The issue presented by said charge we think is embraced in the general charge of the court.

Special charge number 15 requested by defendant and refused by the court, and made the ground of the fourteenth assignment of error, was properly overruled because the issue presented in said special charge was embraced in the general charge of the court.

Appellant's fifteenth assignment of error complains of the following charge: "If the evidence shows that Pierson made statements reasonably calculated to induce, and that did in fact induce, Collins to buy the gasoline, and that such statements were untrue, it does not matter, so far as concerns defendant's liability, provided it is liable at all, whether

he, Pierson, believed such statements were true or not." The objection to this charge is, that this issue had been presented to the jury in another part of the charge, and its repetition gave undue prominence to the same, and further, that the charge is on the weight of evidence. We do not think the charge was subject to this criticism. This assignment is therefore overruled.

Appellant's seventeenth assignment of error complains of the action of the court in allowing plaintiff to prove by the witness Will Mackey that, at a period of time several weeks prior to the explosion, witness had a conversation early one morning with George Davis, when no one else was present, and in said conversation George Davis stated to the witness that he, Davis, had been told by a person whose name was not disclosed that the gasoline was safe at the point where it was stored, the objection being that the testimony was hearsay and not in support of plaintiff's allegations, was immaterial, and prejudicial to defendant." This evidence was admitted to show the state of George Davis' mind as to the danger while engaged in working in the laundry. The name of the person who made the statement to George Davis was not permitted to go before the jury. Mackey testified "that early one morning George Davis told me that the gasoline was safe where it was." There is no evidence in the record fairly tending to show that George Davis knew of the dangerous qualities of 87-degree gasoline, or that he knew that there was any danger in drawing the gasoline from the drum where it was stored. Mrs. Collins testified "that she told George Davis that Mr. Pierson told her that there was no danger from the tank." This evidence was not objected to. We conclude that the admission of this evidence presents no sufficient ground for reversing the judgment, and said assignment is overruled.

Appellant's eighteenth assignment of error complains of the refusal of the special charge relating to the liability of a corporation resulting from the act of one who is merely its agent. Under this assignment the following proposition is presented: "Under the Texas law allowing a recovery of damages for injuries resulting in death, a corporation can not be held liable where it appears that the act complained of was that of a mere agent, and not that of one of the managing officers of the corporations." It is urged that it was error to refuse a charge comprehending the above proposition.

The defendant corporation is a Missouri corporation, having its principal office in St. Louis, in said State. It was represented in northern and middle Texas by its manager, William Grice. As such manager, Grice employed Pierson as the agent of defendant at Ennis to sell the articles manufactured by defendant. Grice testified: "Pierson had general control over the company's business at Ennis. It was his duty to sell our goods there, and to do his best to sell them." Pierson did not know of the dangerous qualities of 87-degree gasoline. The company was negligent in employing an agent who was ignorant of the dangerous qualities of the articles which were placed in his hands for sale. The company was engaged in the occupation of manufacturing and selling

an article known by it to be inherently dangerous to human life. The law imposed upon it the duty to notify and warn the purchaser of the dangerous qualities of such article. It could not avoid its duty in this respect by selecting as its means of making such sale an agent ignorant of the dangerous qualities of such article. We conclude that the eighteenth assignment of error is without merit, and it is therefore overruled.

There was no error in refusing the special charge made the ground of appellant's nineteenth assignment of error, and hence said assignment is overruled.

As heretofore stated, the common law imposed upon the vendor of dangerous articles the duty of notifying and warning the purchasers of the qualities of such articles, and the fact that the sale, or the manner of delivery of such articles, is not prohibited or regulated by any statute in this State, does not affect plaintiffs' right to recover at common law.

Defendant's twentieth assignment of error complains of the action of the court in refusing its special charge number 6. This charge is based upon a misconception of the evidence. The evidence does not show that 87-degree gasoline is ordinarily used or employed in the laundry business. The evidence shows that standard gasoline is from 69 to 72 degrees, and that this is generally used. Pierson testified that he had never sold any of the 87-degree gasoline previous to his sale to Collins. Collins had never bought or used any of this grade of gasoline previous to such purchase from Pierson. There is nothing in the record to show that George Davis assumed the risk when he engaged employment with Collins incident to the use of the 87-degree gasoline.

The twenty-first assignment of error brings in question the correctness of the court's ruling in refusing to quash the deposition of the witness Mrs. Collins. The ground of the motion was, that she had failed to answer one of the cross-interrogatories. The following question was propounded to her: "Were there any regulations in force prescribed by you, or by any other authority, in regard to the handling of the gasoline, as to the time of drawing it, quantity or method of thus handling and using it; if so, by whom were such regulations made, and were they acted upon or not?" To which she answered: "The work of operating the laundry was in charge of the foreman; they were told to draw as much as possible in the morning."

This answer, while not as full as it could have been, we think fairly answers the interrogatory.

There was other testimony that gasoline was drawn from the drum once or twice a day, and that it was the duty of the foreman Reid and the engineer Davis to draw the gasoline for use, and they were so engaged when the explosion occurred.

Again, the motion to suppress was filed April 23, 1897, and not presented or acted upon until December 23, 1899, long after the first term of court subsequent to the filing of the deposition. The statute seems to contemplate that a motion to suppress shall be filed and determined at the first term of the court after the filing of the deposition. Rev. Stats., art. 2289. The twenty-first assignment is overruled.

We have considered the assignments presented in appellants' brief seriatim, and disposed of each in the order presented. We were induced to do this by reason of the importance of the questions, and the urgency with which they were presented by the parties in oral argument as well as by brief. A discussion of each assignment in detail has compelled in some instances a repetition of the evidence bearing upon the questions presented. We hold it to have been the duty of appellant, in selling and delivering gasoline of the grade and with the qualities of that sold and delivered to Collins, to give warning to the vendee or person to whom it is delivered of the dangerous qualities of such gasoline. We could probably have answered many of the questions presented by a reference to such duty without the necessity of discussing each assignment in detail.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*