STAMFORD & WESTERN GAS CO. v. STARKEY et al.

No. 664.

Court of Civil Appeals of Texas. Eastland.
Feb. 28, 1930.

Rehearing Denied April 4, 1930.

side, and Mrs. Hodges did not wish to purchase it in that condition, because she feared that ashes and fire would escape through these openings and set her house on fire. She communicated this reason for objecting to the pipes to Mrs. Gibbs, and it was agreed that the pipes would be removed and the holes closed to meet this objection. Mrs. Hodges paid for the stove, and, by agreement, was to return with her husband late in the afternoon to get it. When they returned they discovered that the pipes had been removed, but the holes in the side of the wall had not been plugged. The attention of Mrs. Gibbs was called to this fact, whereupon, according to the jury's findings, those holes were closed by appellant. The method of closing them was by screwing therein metal plugs. As a matter of fact, the holes in the wall of the stove did not extend to the fire box. The stove had been used as a water heater, and the pipes had been connected with a water tank. The inner compartment of the stove was the fire box. The water was heated in the space between the inner wall and the outer wall. It was so constructed that, when these openings were closed, the cavity surrounding the fire box was air-tight.

The stove was taken by Mr. and Mrs. Hodges to their home on Saturday afternoon. Appellee E. M. Starkey and his wife and children spent that night as the guests of Mr. and Mrs. Hodges. Mrs. Hodges is the sister of Mr. Starkey. Early the next morning the stove was set up in the Hodges home and a fire kindled therein. Within a few minutes thereafter, a terrific explosion occurred, inflicting horrible injuries upon Mrs. Starkey, from the results of which she died. This explosion was probably due to the fact that water was between the inner wall and the outer wall of the stove and steam was generated by the fire.

This suit was instituted by appellee E. M. Starkey, for himself and as next friend for his two minor children, against appellant and Mrs. Elsie B. Gibbs, joined by her husband, to recover damages on account of the death of his wife and the mother of his children. It resulted in a judgment against Stamford & Western Gas Company for $22,000, apportioned as follows: E. M. Starkey, husband, $10,000; J. Carl Starkey, a four year old child, $5,000; Billie D. Starkey, age seven months, $7,000. Appellees waived all grounds of liability as against Mrs. Gibbs and judgment ran in her favor.

The case was submitted to the jury on special issues, and in answer thereto the following findings of fact were made; the figures corresponding to the numbers of the special issues:

(1) There was water or other substance, which would explode when confined and heat-

J. A. Wheat, of Seymour, and L. C. Penry, of Floydada, for appellant.

Carrigan, Britain & King, of Wichita Falls, and Dickson & Dickson, of Seymour, for appellees.

HICKMAN, C. J.

Prior to the happening of the events giving rise to this suit, appellant had installed a system for distributing natural gas in the town of Seymour. It sold gas stoves and purchased from its customers for resale their used coal stoves. Mrs. G. W. Hodges called at appellant's office to buy a used coal stove known as a "Bachelor" stove. There is a dispute in the evidence as to the facts which transpired in connection with the sale of this stove to Mrs. Hodges, but, in support of the jury's findings and the judgment of the court, we must accept as true the account thereof as testified to by Mrs. Hodges. Mrs. Elsie B. Gibbs, cashier for appellant at Seymour, was in charge of the office and sales department on that day and conducted the negotiations for appellant. She showed to Mrs. Hodges a used Bachelor stove, which was lying in the alley back of the place of business. This stove had two iron pipes protruding from its

ed, between the walls of the stove at the time it was sold and delivered;

(2) Defendant had knowledge of this fact;

(3) The defendant, by the exercise of ordinary care, could have discovered that water or other explosive substance was in said stove at the time of the sale and delivery;

(4) Defendant closed, or caused to be closed, the holes in said stove; (5) defendant was negligent in so closing same; (6) which was the proximate cause of the injury;

(7) Defendant was guilty of negligence in failing to remove the water or other explosive substance from the container jacket before closing the holes; (8) which was the proximate cause of the injury;

(9) Defendant did not give timely warning to the buyer of the condition of the stove with reference to what the bowl thereof contained; (10) this was negligence; (11) which was the proximate cause of the injury;

(12) Defendant was guilty of negligence in selling the stove with water or other explosive substance impounded therein; (13) which was the proximate cause of the injury;

(14) After the holes were plugged, the stove was imminently dangerous to the life and limb of any person coming in contact therewith when used for the purpose for which it was purchased; (15) by a reasonable inspection defendant could have discovered that the stove was imminently dangerous to the life and limb of any person coming in contact therewith when used for the purpose for which it was purchased; (16) defendant made no inspection prior to its sale and delivery; (17) the failure to inspect was negligence; (18) which was the proximate cause of the injury;

(19) $10,000, if paid now in cash, will fairly compensate E. M. Starkey for the damages suffered by him;

(20) $5,000, if paid now in cash, will fully compensate J. Carl Starkey for the loss of pecuniary benefits suffered by him;

(21) $7,000, if paid now in cash, would fully compensate Billie D. Starkey for the loss of pecuniary benefits suffered by him.

In answer to special issues requested by appellant, the jury found:

(1) The jacket about the stove contained water at the time it was sold and delivered;

(2) Defendant represented to Mrs. Hodges, the purchaser, in substance, that when the plugs were screwed in and the holes closed, the stove would be all right and fit for the purposes intended, which representations were untrue;

(3) Mrs. Hodges relied on these representations.

It is well settled that appellees could not recover on a breach of the warranty made by the seller to the buyer. They were not parties to the contract of sale, and therefore the ele-

ment of privity essential to enable one to maintain a suit for breach of warranty was lacking. Appellees concede this to be the rule. Their action is for tort, and, if the judgment is to be upheld, it must be upon some specific finding of tort. A study of the verdict of the jury has led us to the conclusion that the findings are conflicting and will not support the judgment.

The jury found that the appellant had actual knowledge that water was between the walls of this stove at the time it sold and delivered same. It then found that the appellant's failure to inspect was negligence, which was the proximate cause of the injury and death of Mrs. Starkey. These findings of the jury are in irreconcilable conflict. The finding that appellant's failure to inspect was the proximate cause of the injury was tantamount to a finding that, had an inspection been made, the injury would not have occurred. The query arises: Why would the injury not have occurred? The only answer is that the jury found that inspection would have resulted in actual knowledge of the dangerous condition of the stove, and that, with such actual knowledge, appellant would either have relieved it or have given warning thereof. But the jury had already found that, with actual knowledge, it did neither. The findings are so contradictory as to render them mutually destructive, and each must therefore pass out of consideration as the basis of the judgment. Liability cannot be predicated upon the finding that appellant had knowledge, but negligently failed to warn. Neither can it be predicated upon its negligent failure to obtain knowledge, for there is a jury finding opposed to each of these theories, and a judgment cannot properly be rendered contrary to the finding of a jury on a material issue.

There are findings that appellant was negligent in: (a) Closing the holes; (b) failing to remove the water; and (c) selling the stove with water impounded therein. Each of these acts of negligence is found to be the proximate cause of the injury. How could either of these acts be said to be negligent, except that it be based upon the fact that appellant had knowledge, or upon the fact that it failed to inspect? To close the holes would not be negligence unless appellant either had knowledge of the presence of the water or was guilty of negligence in failing to discover its presence. The same is true of failing to remove the water and also of selling the stove. These three grounds of negligence are not separate and independent grounds standing alone, but each relates to, and must be supplemented by a finding, either of negligence based upon knowledge and failure to warn, or of negligence in failing to inspect. Since both of these latter findings of negligence are removed from consideration because of their conflict, there remains no separate independent ground of negligence upon which the judgment can rest.

It is insisted that the judgment is supported by the finding of fraud made in answer to the special issues requested by the appellant. The fraud relied upon consists of the findings: (a) Representation by appellant to Mrs. Hodges that the stove, when the holes were closed, would be "all right and fit for the purposes intended"; and (b) Mrs. Hodges relied upon these representations. The argument is advanced that, since fraud may be predicated upon a false representation, even though the one making it did not know of its falsity, it is immaterial whether appellant knew of the condition of this stove. There is some authority for the contention that the fraud of the seller may be made the basis of recovery by a person not a party to the contract, but the fraud must be of a positive character, such as intentional concealment with knowledge. The representation here found by the jury to have been made by the seller was merely a warranty. To hold that the appellees would not be entitled to recover on this representation as a warranty, but that they could recover on the same representation by labeling it a fraud, would be to destroy the well-established rule that a person not a party to a contract cannot recover on the warranty, for in every case of breach of warranty fraud could be alleged, based upon the fact that the warranty was an untrue representation. We considered a similar question in the case of Dodson v. Roberts (Tex. Civ. App.) 4 S.W.(2d) 155.

All of the questions above discussed are fundamental in their nature. A judgment must have support in the findings of the jury, and it is our duty not to uphold a judgment based upon conflicting findings. On no theory can the judgment in the instant case be supported by the findings, and a reversal must be ordered.

In view of another trial, and in deference to the contentions in the briefs as to the manner by which a corporation is charged with knowledge possessed by its agents, servants, and employees, we refer the honorable trial court to the following authorities: Missouri, K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518; 2 Tex. Jur. § 162, pp. 570–572; 2 C. J. pp. 859–866.

For the reasons indicated, the judgment of the trial court will be reversed, and the cause remanded.

### On Motion for Rehearing.

We have been surprised by the argument of appellees on rehearing. They agree that the effect of the answer that failure to inspect was the proximate cause of the injury is that the jury found that an inspection would have resulted in actual knowledge of the dangerous condition of the stove, and that, with such actual knowledge, appellant would either have relieved it or have given warning thereof. But they contend that there was no finding of actual knowledge of the dangerous condition of the stove in the answer to special issue No. 2. It is urged that a finding of actual knowledge of the presence of water or other explosives in the stove was not a finding of actual knowledge of the dangerous condition thereof. It is assumed that, perhaps, the jury thought Mrs. Gibbs was not acquainted with the laws of physics, and that, although she might have known that water was in the stove, a finding that the company, through her, knew such facts, was not tantamount to a finding of knowledge of the dangerous condition. This argument pursued to its conclusion would be that the gas company was guilty of negligence in employing an incompetent saleswoman and placing her in charge of its salesroom. No such ground of negligence was pleaded or submitted to the jury, and the judgment can certainly not be affirmed on that theory. It may be that the theory now advanced is the one which should have been pleaded and submitted. That was the basis of recovery in Waters Pierce Oil Co. v. Davis, 24 Tex. Civ. App. 508, 60 S. W. 453. But that question is not before us.

The theory of appellees presented in their motion for rehearing, that there was no finding of actual knowledge of the dangerous condition of the stove, is in direct conflict with the theory upon which the case was pleaded; it is in conflict with the theory upon which it was tried; and is expressly refuted many times in their own briefs filed in this court. In their petition upon which they went to trial they specifically alleged in paragraph No. 9 that the defendant knew of the facts that constituted said stove an inherently dangerous instrument, and predicated a theory of liability thereon in that, with such knowledge, it failed to warn. The theory of liability by failure to inspect was pleaded in the alternative only. The court did not submit the issues alternatively, and therein lies the trouble in arriving at any theory of liability here that is not contradicted by some finding of the jury.

In their brief filed in this court, on page 2 thereof, they epitomize their petition under seven headings, the third of which is: "Defendant knew the facts that constituted the stove dangerous or at least was in possession of such facts as to estop it to deny knowledge." The brief contains thirteen counter propositions, the first of which reads as follows: "The jury having found that the stove in the condition in which it was sold and delivered by defendant was imminently dangerous to persons coming in contact therewith when used for the purpose it was intended, and that such condition was known to the defendant, or by the exercise of ordinary care should have been known, the defendant was liable to plaintiffs, even though the deceased

was not in privity of contract with the defendant."

Other propositions contain the assertion that the jury found that the dangerous condition of the instrument was known to the defendant. The opening page of the argument in this brief states that appellees pleaded and proved, and the court submitted, this case on three theories. The first theory stated is: "That where the vendor of an article has actual knowledge of its defective condition, rendering it highly and imminently dangerous, and gives no warning to the purchaser, he is liable to third persons for injuries therefrom, even though they are not in privity with him."

From the next page of this brief we copy the following paragraph: "However, the statement just made of the general rule is not entirely accurate, as a seller has ever been held liable to a third person, not only where the article sold is inherently dangerous, but also where it was designed to preserve, destroy or affect human life, or *where the seller had actual knowledge of the defect and gave no warning of it*." (Italics by appellees.)

The same argument is reiterated in other language on page 18 of the brief, from which we quote:

"In the case at bar the jury found that the water was in the wall of the stove, and that the defendant *actually* knew it, and that defendant closed the holes, which rendered the stove imminently dangerous to one coming in contact therewith (and who can doubt the justice of the last finding?)

"Under this unattacked finding of actual knowledge of the dangerous condition, and failure to warn, we are not relegated to the *modern doctrine*, but can plant our colors with confidence on the ancient doctrine stated in Harvard Law Review, and recognized in the decisions cited in appellant's brief, that knowledge of the dangerous condition without warning *renders the seller liable to third persons*." (Italics by appellees.)

The first two issues contained in the court's charge, each of which the jury answered, "Yes," are as follows:

"Special Issue No. 1: Was there water or other explosive substance within and between the walls of said stove at the time it was sold and delivered that when confined and heated would become explosive?

"Special Issue No. 2: Did defendant, Stamford & Western Gas Company, have knowledge through its agents, servants and employees acting in the scope or apparent scope of their authority that water or other explosive substance when confined and heated was in said stove at the time of the sale and delivery thereof?"

We are now urged to disregard these findings as findings of actual knowledge of the dangerous condition of this stove, notwithstanding the pleading upon which the case was tried, and notwithstanding the construction which appellees have heretofore placed upon these findings. We are unable so to construe these issues. We do not think the jury meant to find, or did find, in answer thereto, merely that Mrs. Gibbs, saleslady, knew that water was in the stove, but did not know that its presence rendered same dangerous. No such theory was pleaded or has been heretofore asserted.

It is also urged that we are in conflict with the decision of the Court of Civil Appeals at Waco in Perez v. H. & T. C. Ry. Co., 5 S.W. (2d) 782. We can see no conflict at all between the decisions in the two cases. That case decided the same question which we decided in Lanius v. Panhandle & S. F. Ry. Co., 7 S.W.(2d) 1099.

The least that can be said of the rights of a defendant in a damage suit is that, before he is compelled to pay money to the plaintiff on findings of the jury, he must know of what wrong he has been convicted. This to us seems elementary, and it certainly is in agreement with very many decisions in this state. The finding that failure to inspect was the proximate cause of the injury is, in effect, a finding that appellant had no actual knowledge of the dangerous condition of the stove. We cannot reconcile that finding with the findings that it had actual knowledge of the presence of water between the walls; that it failed to warn; and that its failure to warn was negligence, which was the proximate cause of the injury.

We failed to state in our original opinion that the cause is remanded for another trial between appellant and appellees only. The judgment in favor of Mrs. Gibbs is not before us, and that portion of the judgment below will not be disturbed.

The motion for rehearing is overruled.