## Missouri, Kansas & Texas Railway Company v. John H. Belcher.

### No. 317.

**1. Notice—Station Agents.**

Prima facie the person in charge of a station at one place (station agent) has no power to act for the railway company in reference to the making of a contract of shipment to his station from another station on the railroad. Nor would it be the duty of the station agent receiving notice relating to a shipping contract made elsewhere, to transmit such notice to agent at the station at which the shipment was made. His failing to do so would involve the road in no liability............................................................. 551

**2. Same.**

Notice to station agent at Gainesville of special damage likely to result from delay, in time to have enabled him to notify the agent at Sherman before the latter executed the bill of lading, did not render the railway liable for such special damage resulting from a delay in the shipment of the freight. 551

**3. Questions Certified.**

Questions certified upon the presence and the absence of a suggested fact do not present a question of law, and will not be answered by this court. See example ......................................................................551, 552

88   549
s89   431
f90   396
91    26
91   617
92   357

QUESTIONS CERTIFIED from Court of Civil Appeals for Second District, in an appeal from Cooke County.

*R. C. Foster* and *A. E. Wilkinson*, for appellant.

*Yancey Lewis*, for appellee.

DENMAN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Second Supreme Judicial District have certified to us the following questions and explanatory statement:

"Appellee was feeding 1650 beeves at Gainesville, upon cotton seed meal and hulls. Being unable to obtain the requisite amount of hulls at Gainesville, he ordered a car shipped from Sherman over appellant's road. Before the bill of lading was signed by appellant's agent in Sherman, appellee told its agent at Gainesville about ordering the car and the damage that would result from delay, and asked him to expedite the shipment. The Gainesville agent at once notified appellant's trainmaster by telegram. The Sherman agent could also have been notified in the same way before the latter received the car or executed the bill of lading; but we can not say from the undisputed evidence that this was done. The evidence justifies the finding that the hulls were unreasonably delayed, by which the beeves were deprived of their regular food for nearly two days, thus causing material depreciation in their weight. The evidence does not inform us as to the extent of the powers actually conferred by appellant upon its train master and station agents, but it does appear from the evidence, that the train master referred to had charge of the movement of all trains south of Denison on appellant's road, except on the Dallas division, and that his duty was to look after and control the movements of said trains; and he also had charge of all agents over his divisions.

"Questions: 1. Was notice to the agent at Gainesville of the special damage likely to result from delay long enough to have enabled him to notify the agent at Sherman before the latter executed the bill of lading, sufficient to render appellant liable therefor?

"2. If question number 1 be answered in the negative, and we should find that the train master is shown by the undisputed evidence to have had notice of this prospective damage in time for him to have notified the agent at Sherman before the latter made the contract for the shipment, would this render appellant liable?

"3. If question number 1 should be answered in the negative, and we should find from the undisputed evidence that the train master had notice of this prospective damage before the delay occurred, and in time to have prevented it, but are unable to say that he had such notice before the contract of shipment was made by the agent at Sherman, would this render appellant liable? In other words, does the rule which generally obtains in other jurisdictions where the carrier has the right to regulate his charges by the risks assumed, and

which therefore requires notice of special damages to be given before the contract of shipment is made, apply in this State, or can the shipper, by showing negligence on the part of the carrier after notice given subsequently to the making of the contract, hold it, not for the breach of the particular contract, but for the violation of a duty it owed him as a member of the public? See Railway v. Levy, 59 Texas, 548, 549."

We understand the first question, when taken in connection with the accompanying charge, which we do not copy, to involve the questions, (1) whether notice to the agent at Gainesville was notice to the company; and (2) whether it was within the scope of his agency to transmit the information he received to the agent at Sherman.

The general rule is, that notice to the agent is notice to the principal.

The word agent, as used in this connection, means the person who has power to act for the principal with reference to the very subject matter to which the notice relates, and does not include a person who has no such power, though he may have power to act for the principal with reference to similar subjects. The words agent and act are from the same root, and the above limitation of the use of the former is inherent in its derivation.

Prima facie the person in charge of the station at Gainesville, who is commonly termed the station agent, had no power to act for the company in reference to the making of the contract of shipment of the car of hulls from Sherman. The car did not come within the apparent scope of his agency until it reached Gainesville. Until then he had no power to act for the company with reference thereto, and the use of the word agent with reference to him, in the application of the general rule above stated to the facts of this case, is inaccurate and misleading. It follows that the notice to him was not notice to the company. Congar v. Railway, 24 Wis., 157; 1 Am. Rep., 164; Kaufman & Runge v. Robey, 60 Texas, 310; Labbe v. Corbett, 69 Texas, 507; Irvine v. Grady, 85 Texas, 125; Taylor v. Taylor (Texas Sup. Ct.), 29 S. W. Rep., 1057.

For the same reasons, we do not think it was within the apparent scope of his agency to transmit the information to the agent at Sherman, and therefore his failure to do so would not render the company liable, any more than if the information had been delivered to an entire stranger to the company, and he had failed to transmit. We know of no principle of law requiring an employe to transmit to another employe of a common employer information given him by a stranger in reference to business beyond the scope of his agency, or that will impute knowledge of such information to the other employe or the master, upon his failure to transmit.

We therefore answer the first question certified in the negative.

The second and third questions propounded are not based upon any facts found by the Court of Civil Appeals as being shown by the record before them; but the second is based upon the supposition that the train master had notice, and the third upon the supposition that

he had no notice before contract was signed.    The statute prescribing the instances in which a Court of Civil Appeals can certify questions to this court reads as follows: "Whenever in any case pending before the Court of Civil Appeals there should arise an issue of law which said court should deem it advisable to present to the Supreme Court for adjudication, it shall be the duty of the presiding judge of said court to certify the very question to be decided to the Supreme Court, and during the pendency of the decision by the Supreme Court, the cause in which the issue is raised shall be retained for final adjudication in accordance with the decision of the Supreme Court upon the issue submitted."    It will be observed that the certification is not authorized, unless "there should arise an issue of law" in a "case pending before the Court of Civil Appeals;" and then the law requires "the very question to be *decided*" by the Court of Civil Appeals to be certified, and directs that the cause shall be finally adjudicated in the Court of Civil Appeals in accordance with the decision of the Supreme Court "upon the *issue* submitted."    This statute does not authorize this court to pass upon any question certified, unless it arises in a case pending before the Court of Civil Appeals.    It is evident that the two supposed states of facts upon which the respective questions are based can not coexist, and that therefore one or the other of the "issues of law" presented does not "arise in a case pending before the Court of Civil Appeals."    We can not determine which of the issues of law does and which does not arise in the case, for we can not determine which state of facts will be found by the court from the record. Where it appears affirmatively from the certificate that we are called upon to answer two questions, one of which does not arise in the case, and we can not determine which does so arise, we think it would be an unwarranted assumption of jurisdiction for us to answer either, and therefore we refrain from answering the second two questions certified.    Cunningham v. Railway, 67 Iowa, 514; Miller v. Buena Vista Co., 68 Iowa, 712; Steam and Feed Co. v. Olive, 82 Iowa, 122.

Delivered October 28, 1895.