KELLER et al. v. LINDOW et al.†

(Court of Civil Appeals of Texas. Nov. 30, 1910. On Motion for Rehearing, Jan. 4, 1911.)

1. HUSBAND AND WIFE (§ 221*)—JUDGMENT—EFFECT.

Where a grantee of an undivided half interest in land joined with a third person in the purchase of the other half, subject to a vendor's lien for the price thereof, and made the land his homestead, a judgment foreclosing the lien on the entire tract, rendered in a suit to which the wife of the grantee was not a party, was void as to the undivided half originally purchased by the grantee.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 707, 802–806; Dec. Dig. § 221.*]

2. HUSBAND AND WIFE (§ 198*) — CONVEYANCE BY WIFE—ESTOPPEL.

A married woman who falsely represented herself to be single, and who conveyed land to a grantee relying on her representations and performing the acts required of him to obtain title, is guilty of fraud and is estopped from asserting title as against him.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 198.*]

3. VENDOR AND PURCHASER (§ 242*)—BONA FIDE PURCHASER—BURDEN OF PROOF.

A subsequent purchaser has the burden of proving that he is a purchaser without notice of a prior conveyance of the grantor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. § 242.*]

---

**4. TRESPASS TO TRY TITLE (§ 10*)—LEGAL TITLE—EQUITABLE RIGHTS.**

A married woman who is not a party to an action to foreclose a vendor's lien on an undivided half of a tract of land occupied by herself and her husband as a homestead is not bound by a judgment erroneously foreclosing the lien on the entire land, instead of only on the half thereof subject to the lien, and she may sue in trespass to try title to recover the undivided half erroneously included·in the judgment, and she need not resort to equitable pleadings to open the judgment to assert her right.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig.·§ 13; Dec. Dig. § 10.*]

**5. HOMESTEAD (§ 181*)—ABANDONMENT—EVIDENCE—ADMISSIBILITY.**

A declaration of a claimant to a homestead, as to his intention to return thereto, may be proved after claimant's death, on the issue of abandonment.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 351; Dec. Dig. § 181.*]

**6. HOMESTEAD (§ 181*)—ABANDONMENT—EVIDENCE—ADMISSIBILITY.**

A declaration of a claimant to a homestead, as to his intention to return thereto,·is admissible on the issue of abandonment, though self-serving.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 351; Dec. Dig. § 181.*]

**7. HUSBAND AND WIFE (§ 232*)—CONVEYANCES—ACTIONS—EVIDENCE.**

In a suit by one claiming under a prior deed of ·a married woman, executed by herself alone, on her representation that she was single, against a subsequent purchaser under a deed by her and her.husband, evidence of her reason for not informing the grantee in the prior deed that she was a married woman was material on the issue of fraud, though the subsequent purchaser was not present at the conversation between her and the prior grantee.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 232.*]

**8. HUSBAND AND WIFE (§ 232*)—CONVEYANCES—VALIDITY.**

A power of attorney and a deed executed by a married woman alone, on her fraudulently representing to the grantee that she was single, is properly received in evidence. together with the evidence of her fraud to show a binding ·conveyance.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 232.*]

**9. APPEAL AND ERROR (§. 760*) — RECORD — BRIEF.**

The court on appeal need not search the record for evidence, where the brief does not point out where in the record the evidence may be found.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3095; Dec. Dig. § 760.*]

**10. APPEAL AND ERROR (§ 174*)—QUESTIONS REVIEWABLE—QUESTIONS NOT RAISED IN TRIAL COURT.**

Where a guardian of an estate of her children brought·an action in trespass to try title as their next friend, the objection that she ·could not sue as next friend could not be raised for the first time on appeal, since the objection went to the capacity in which plaintiff was suing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1121–1132; Dec. Dig. § 174.*]

**11. APPEAL AND ERROR (§ 1054*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.**

Where the judge states, in allowing a bill of exceptions complaining of the admission of evidence, that he recognized the inadmissibility thereof and gave no heed to it, the assignment of error complaining of the admission of the evidence will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4185, 4186; Dec. Dig. § 1054.*]

**12. NEW TRIAL (§ 104*)—NEWLY DISCOVERED EVIDENCE—DILIGENCE.**

Where the newly discovered evidence relied on for a new trial was cumulative, the denial of a new trial was not erroneous.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 218–220; Dec. Dig. § 104.*]

**13. NEW TRIAL (§ 102*)—NEWLY DISCOVERED EVIDENCE—DILIGENCE.**

Where there was a lack of diligence to procure alleged newly discovered evidence and no continuance was asked, the denial of a motion for new trial on the ground of the existence of such evidence was proper.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 210–214; Dec. Dig. § 102.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Mrs. Mollie Lindow and husband, for herself and as next friend of minor children, against Theodore Keller and others, in which H. N. Atkinson intervened. From a judgment for plaintiffs and intervener, defendants appeal. Affirmed.

Mrs. Lindow filed her petition in the ordinary form of trespass to try title, claiming an undivided half of a 160-acre tract of land, against Theodore Keller and Rudolph Spurli, alleging that defendants owned the other half. Afterwards she filed an amended petition in same form, alleging herself to be Mollie Schott, formerly Mollie Lindow, joined by her husband, Dan Schott, suing for herself and as next friend of her children, naming them, and naming as defendants Ike Keller, Max Keller, Alex Keller, Blanche Keller, and husband, Jake Keller, and Rudolph Spurli, alleging that defendants are equal owners with her of the land, owning an undivided half. Defendants pleaded general denial and not guilty. H. N. Atkinson intervened, alleging that on June 13, 1908, plaintiff, under the name of Mrs. Mollie Lindow, and as a feme sole, executed to him a power of attorney coupled with a half interest in the land in controversy herein, whereby she employed him to bring this suit and recover for her the land in controversy herein. That on July 24, 1908, she, as a feme sole, under the name of Mrs. Mollie Lindow, executed a deed of trust to C. Stanley Earnhart, trustee, whereby she conveyed an undivided half of the land in controversy, to secure a note for $55, due 90 days after date for money loaned her by intervener. That through sale under said deed of trust the land was regularly conveyed by the trustee to intervener on December 1, 1908. Further, that said Mollie Schott

joined by her husband, Dan Schott, on November 12, 1908, executed a power of attorney to intervener, authorizing him to bring suit on behalf of the minor plaintiffs to recover their interest in the land, agreeing that intervener should have an undivided half of any interest he recovered for said minors; that said fee was contingent upon a recovery in this cause; that the same is a reasonable fee, and intervener asked, in the event of a recovery for the minors, that the court fix his compensation accordingly; and he prayed, further, under the power of attorney and said trustee's deed, that he recover one-half of said property from Mrs. Mollie Schott and from defendants, and for general relief. The cause was tried by the court, and judgment given for plaintiffs for an undivided one-fourth of the land, and for intervener for an undivided one-fourth thereof; against the defendants, the decree providing that intervener take nothing upon his application for fee, but without prejudice to his right to apply to the probate court for same. Defendants Keller appeal.

No conclusions of the judge were filed, and therefore, on appeal, it must be assumed that every issue arising in the evidence was resolved against appellants.

It appears that one Charles Gessler, owner of the tract, conveyed an undivided half thereof to Benjamin Lindow, and afterwards in April, 1894, conveyed the other half to Benjamin Lindow and C. C. Porter, reciting four notes for part of the purchase money, the deed containing this recitation: "I have hitherto sold and conveyed to the said Benjamin Lindow an undivided one-half interest in the herein-described tract of land, the purpose of this instrument is to convey the remainder of said tract and to make a deed as well to that portion conveyed as aforesaid and to vest title in the said Lindow and Porter to the entire 160 acres composing the J. Schnell survey. * * * But it is expressly agreed and stipulated that a vendor's lien is retained against my one-half interest in the within-described J. Schnell tract of land, premises, and improvements until the above-described notes and all interest thereon are fully paid, according to their face, tenor, and effect, when this deed shall become absolute." Lindow died several years afterwards (about 1890 or 1891), and in his lifetime Theodore Keller (in May 1900) recovered judgment on said notes with foreclosure of vendor's lien, however, on the entire tract, and under the decree the entire tract was conveyed by the sheriff to Theo. Keller, as the property of B. Lindow and C. C. Porter. The effect of this sheriff's deed, as to depriving plaintiffs of title, was overcome in this case by the evident conclusion of the trial court that the undivided half of the tract which Lindow had, free from the vendor's lien, was, at the time of the said foreclosure suit, homestead, and consequently as to the wife the inclusion of it in the foreclosure was void. This feature of the case will be considered, after some further statement of the case.

It also appears that Mrs. Lindow, on June 13, 1908, after she had married Schott, employed Atkinson and, as a feme sole, conveyed to him a half interest in 80 acres of the land for serving as attorney in recovering same. The fact that she was a married woman at the time of this conveyance evidently was overcome by a conclusion on the part of the court that she represented herself to Atkinson and made the conveyance as a feme sole, and as such thereby procured his services, and was estopped to claim the benefit of the fact that she was a married woman at the time. It also appears that she, in the capacity of a feme sole, induced Atkinson to recommend a loan by deed of trust of $50 to her on her remaining undivided fourth of the tract, for which he vouched, and afterwards protected, and that when he learned of the conveyance mentioned in the next following paragraph, the trust deed was executed and he took the trustee's deed to said interest. The fact that she was a married woman when this deed of trust was given the court doubtless overcame by finding that she was estopped by her dealing as a feme sole, as in the previous transaction. It appears, also, that in August, 1908, Mollie Schott, formerly Lindow, joined by her husband, Dan Schott, for $35, conveyed to Ike, Blanche, Max, and Alex Keller, heirs of Theo. Keller, all their right, title, and interest in the 160-acre tract. The effect of this deed, as a conveyance vesting title, was doubtless overcome by the conclusions that by Mrs. Schott's transactions with Atkinson, she had no interest left in the property, and that the grantees in the deed were not innocent purchasers as to intervener.

A. R. & W. P. Hamblen, for appellants. A. R. Masterson, H. N. Atkinson, and H. Masterson, for appellees.

JAMES, C. J. (after stating the facts as above). We conclude, in view of the judgment rendered, that there was testimony which warranted the court in finding as a fact that the land, shortly after the purchase by Lindow of an undivided half, became his homestead and although he, after improving and occupying it as such for a year or two, moved from it, he up to the time of his death intended to return to it as his home, and that he never formed an intention not to do so. To the extent of his title, which was an undivided half, it was therefore his homestead when the foreclosure and sheriff's deed to Keller were made.

We conclude, further, that inasmuch as Keller had no lien on said undivided half, which was homestead of Lindow and his wife, and inasmuch as the wife was not a party to the proceeding, the same was void as to such half and passed no title therein to Keller.

We conclude, also, that the circumstances under which Mrs. Lindow (then Schott) conveyed to intervener Atkinson one-fourth of the land, by estoppel in pais, passed her title, to that extent, to Atkinson, although her husband did not join her in the conveyance. There was testimony that she acted, in so doing, as a feme sole. She had but recently remarried, and not only concealed the fact from Atkinson, which she says she did under advice, and therefore deliberately, but in an affidavit made by her at the same time and in connection with her employment of Atkinson, she described herself as a feme sole. Atkinson relied upon this in taking the conveyance from her and in accepting the employment and in rendering services. Under like circumstances, and before Atkinson was informed to the contrary, she procured the loan of $55. Atkinson testified: "That Mrs. Lindow was introduced to me by Mr. Cullen, who brought her to me, and she was introduced to me as Mrs. Lindow. She told me that was her name and I believed that she was a single woman, and I did not learn any different until some weeks afterwards. After she was introduced to me, I made the contract with her that was offered in evidence. I brought this suit, examined the abstract, and rendered such service as I thought necessary, and did so in the belief that she was a single woman. Afterwards, she came to me and told me she was about to lose her furniture on account of not having a little money, and wanted to borrow some money to save her furniture. I didn't have any money, but my son, Norman, had a few dollars and I told him I believed it would be safe to make the loan of $50 and he did so, and I assured him that if he would make the loan that I would see it repaid. He did make the loan, and when the note came due I found that the Kellers had a second deed to the property from her as Mrs. Schott; so I had that trust deed foreclosed and bought it in and paid my son the $50. I think I paid him $55. I did that work and got her the money in the belief that she was a single woman, and I did not suspect that she had married again until she told me, after this suit was brought and after she had gotten the $50. When I first heard she was married, I asked her about it and she told me that there had been some talk about it, but that she was not married."

Mrs. Schott testified: "I first told you, Mr. Atkinson, that I had a second husband about a week or so afterwards. I told you that I had a husband. This was after I gave the trust deed for the $55, after the suit was brought. Suit had been brought some time." She also testified: "When I came to Mr. Atkinson to employ him in this matter, I did not tell him anything about my second marriage. I was advised not to. I know what feme sole means; it means a lone woman."

It appears that she deliberately held herself out as a single woman, in the transaction with Atkinson, concealed the fact of her being married, knowing that Atkinson was dealing with her under the impression that she was a feme sole, and as Mrs. Mollie Lindow made a statement of the circumstances of her title under oath, in which was set forth, that she was a feme sole, that she was married to Benjamin Lindow in December, 1893, that a short time after their marriage they moved upon 80 acres of this tract, and made it their home until some time in 1902, and among other facts stated that they never abandoned it as their homestead, and that it was the intention of her husband to return to it up to the time of his death.

We therefore conclude that the evidence warranted a finding by the trial judge that she was guilty of a positive fraud, inducing both transactions, and that she was therefore estopped from claiming the advantage that the status of a married woman would give her.

We conclude, in addition, that it was not shown by any testimony that the grantees in the deed of August 31, 1908, were purchasers without notice of the transactions of their grantor with Atkinson; the burden of showing this being upon them.

In view of the foregoing conclusions, we overrule the assignments of error 1, 2, 4, 6, 9, and 10.

The eighteenth assignment is that plaintiff has brought this action in the form of trespass to try title, and the answer was the general issue, and the title of Ben Lindow having by foreclosure and sale passed to defendants, in whom the record title stands, and plaintiffs having pleaded no equities to set aside said decree of foreclosure and sale, the decree showing legal service on Lindow, in such state of pleading the holder of the legal title is entitled to recover, notwithstanding facts which, if pleaded, would have required equitable adjustment otherwise.

Under the nineteenth, it is insisted that the said foreclosure decree, being of a domestic court of general jurisdiction, imports absolute verity and cannot be attacked in a collateral proceeding.

There is no pretense of any question of the right of an innocent third party under the decree. The defendants are the heirs of the plaintiff in the decree, who was the purchaser at his sale. Keller did not even have a lien on the half which was in fact the homestead of Lindow and wife, and in these circumstances the inclusion of the homestead half in the decree, and the sale of it under the decree, were acts involving the transfer of the homestead contrary to the Constitution and laws of the state, not participated in by the wife; she not even being a party to the proceeding. The proceedings as to such half were a nullity and passed no title. The wife not being a party and not bound thereby as to any right she had was not re-

quired to resort to equitable pleadings to open the decree in order to assert her right; and no special pleading in this case was necessary to that end. Campbell v. Elliott, 52 Tex. 151. The assignments are overruled.

Other assignments designated as the sixth, the thirteenth, and the fourteenth all complain of testimony by witnesses of statements made by Lindow, as to his intention to return to the land, upon the objection that a witness cannot be permitted to testify to statements of a deceased person concerning his intention, and, further, because the statements were self-serving. The testimony was proper on that issue. Thigpen v. Russell, and cases there cited, 118 S. W. 1080.

The eleventh is that the court erred in allowing Mrs. Schott to testify concerning her intention to return to the land, for the reason that testimony of an interested party in his interest, and self-serving, is inadmissible. This is also disposed of by the case just cited.

The seventh is that the court erred in admitting in evidence the testimony of Mrs. Schott as to her reason for not telling in the conversation, when she signed the deed of trust and power of attorney to Atkinson, that she was a married woman, for the reason that such testimony was immaterial and irrelevant, and defendants were not present. This is overruled, as the testimony was relevant and material on the issue of fraud practiced on Atkinson in the transaction. Her affidavit was admissible for the same reason, and we therefore overrule the eighth assignment. The power of attorney was objected to, for the reason that instruments affecting title to land executed by married women must be joined in by the husband and privily acknowledged by the wife. The instrument embodied the conveyance to Atkinson, and was properly admitted in connection with other evidence, all tending to show a binding conveyance. We therefore overrule the fifteenth assignment of error. For the same reason, the deed of trust was properly admitted, which disposes of the sixteenth. Likewise, the testimony of Atkinson, which is questioned by the twentieth assignment, which we overrule.

The seventeenth assignment is that the judgment is not supported by the law and the evidence, wherein it was shown by the petition that this action was brought for the minors by next friend, and it was shown by the probate proceedings of Harris county that plaintiff, Mrs. Schott, was appointed said children's guardian, which proceedings were by plaintiff introduced, and therefore suit could not be by plaintiff maintained as next friend, but should have been as guardian. The brief does not point out where in the record the testimony referred to is to be found, and we are not required to search the record for it. If there was evidence introduced showing that Mrs. Schott was guardian of the children's estate, we do not think

the point made here, for the first time, would be of any avail to appellants, for the same person was suing for and on behalf of the children, and, furthermore, the question went to the capacity in which she was suing, and this was not questioned in any manner on the trial.

The twelfth assignment is overruled. The judge states in his allowance of the bill that he recognized the inadmissibility of the testimony, and gave no heed to it.

From what has been held, we must further hold that the court did not err in overruling the motion for new trial for any of the grounds discussed.

The final assignment is that the court erred in not granting a new trial for newly discovered evidence. This evidence was cumulative. In addition, the application did not bring it within the rules governing the granting of new trials for newly discovered testimony. The affidavits disclose that three additional witnesses would have testified to what tended to show that Lindow, with his family, had from the time he married lived in Houston, until he died. The motion states defendants had endeavored to find out where said Ben Lindow had resided from 1894 up to the time of his death, but were unable to do so until about a month before the trial of this cause, when they found the city directories of Houston from 1894 to 1900, which showed that he resided on Sabine or State street in Brunner and on Washington street, and then they began to make diligent search for persons who knew Lindow during those years he resided at said places, but were unable to do so; that is to say, they could not find persons who knew when Lindow resided on said streets and for how long, or that he lived in Houston from and after 1894 until his death, until they found these affiants, which was on August 6, 1909. The judgment was rendered on August 2, 1909. It is, at least, suggestive of a lack of due diligence that what was sought after for a month before the trial, and not found, was found within so short a time after the trial. If the importance of this testimony to defendants was so much realized, and search for it had not been exhausted, it occurs to us that a continuance or postponement should have been sought for the purpose of allowing an opportunity for further search, instead of defendants being satisfied to go to trial and take their chances of getting a favorable judgment without it. Besides this, several countervailing affidavits were filed. The case is not one which requires us to hold that the court committed error in refusing the motion.

Atkinson does not complain of the judgment, and it is affirmed.

### On Motion for Rehearing.

A proposition in this motion is that we have erred in holding that Theo. Keller recovered a judgment on the notes and lien

retained in the deed from Gessler to Lindow and Porter; this not being supported by testimony. The judgment itself tends to show that it was on the same notes, though it does not do so in terms. The amount of recovery bears resemblance to the amount of the notes, the lien foreclosed affects the same tract, and the defendants in the judgment are the makers of the notes. For some reason neither party saw fit to introduce the pleadings in that case, if they were found.

Appellant in making this point has overlooked the testimony of Mrs. Lindow, who stated concerning the said judgment that "Lindow did not owe any other debt besides this one that was sued on. * * * Mr. Lindow's was clear; nobody had anything on his land whatever, his 80 acres." In view of this, the identity of the vendor's lien notes given by Lindow and Porter, with the lien debt foreclosed, is made reasonably certain, and a finding by the trial court to that effect would have been warranted by the evidence.

The motion is overruled.