**NATIONAL LIFE & ACCIDENT INS. CO. v. GIBSON.　(No. 1019–4911.)\***

Commission of Appeals of Texas, Section A. Jan. 11, 1928.

1. Insurance ☞587—Præsenti stipulation against policy alterations did not preclude change of beneficiary in different manner, if subsequently agreed to.

In action against an insurance company for payment of a life policy by one claiming to be beneficiary thereunder, though not the beneficiary named in policy, *held*, that præsenti stipulations of the policy against future alterations did not preclude a change of beneficiary in a manner differing from that originally named, if parties had agreed thereto after making original contract.

2. Insurance ☞587—Agent's authority held too narrow to make his knowledge and conduct regarding change of beneficiary knowledge and conduct of company.

Where the authority of a life insurance agent was only to solicit and make collections, *held*, that the authority was too narrow to make his knowledge and conduct regarding a change of beneficiary in a manner other than that provided in the policy the conduct of the company.

3. Insurance ☞665(1)—Company's action in paying insured's undertaker's bill from policy proceeds at request of one claiming as beneficiary, though not named in policy, held evidence of change of beneficiary.

In an action by a mother against an insurance company to recover proceeds of a life policy held by her deceased son, wherein she claimed as beneficiary under the policy, though she was not named as such in the instrument, *held*, that the company's action in paying the insured's undertaker's bill from policy proceeds at mother's request was some evidence that there had been a change of beneficiary by agreement of insurer and insured prior to latter's death.

4. Insurance ☞668(1)—In action on life policy, whether plaintiff had been effectually substituted as beneficiary held for jury.

In action by a mother against an insurance company for the proceeds of a life policy held by her son, wherein she claimed to be beneficiary, though not named as such in the policy, whether she had been effectually substituted as beneficiary *held* for the jury.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Hattie Gibson against the National Life & Accident Insurance Company. Judgment for defendant was reversed and remanded by the Court of Civil Appeals (294 S. W. 923), and defendant brings error. Judgment of Court of Civil Appeals affirmed.

Read, Lowrance & Bates, of Dallas, for plaintiff in error.

White & Yarborough, of Dallas, for defendant in error.

NICKELS, J. Plaintiff in error issued its policies Nos. D–5563521 and E–5563526 on the life, etc., of Grover Gibson. Each policy had stipulations ("conditions") to this effect: (1) The paper evidenced "the entire agreement"; (a) the "terms cannot be changed or \* \* \* conditions varied except by written agreement signed by the president or secretary of the company"; (3) "no other agent or employee shall have the power to make or alter contracts, waive forfeitures," etc.; (4) "the beneficiary hereunder" (i. e., Airillar Gibson) "may be changed by the insured by consent of the company indorsed hereon"; (5) "production by the company of this policy and of a receipt for the sum insured signed by the beneficiary \* \* \* shall be conclusive evidence that such sum has been paid and that all

claims under this policy have been fully satisfied."

Pomerici was employed at Dallas by the company. His authority and duties were "soliciting new business" and "weekly" collections of premiums, including those becoming due under the Gibson policies. He collected those premiums up to the time of Gibson's death; they were paid by Hattie Gibson with money given her for the purpose by Grover or by Ollie (another son), possibly in part with her own money. Ollie Gibson testified:

"The agent who is sitting here in this courtroom talked to Grover, and Grover told the agent that he wanted mother to get the money when he died, wanted her to have everything, and he said, 'That is all right; she will get it.' Mother begged him every time he came out to collect it and he kept her under the impression that she was going to get everything without any trouble. He said, 'You are going to get it, so long as you pay the premiums, and we know that you are paying them, and you are entitled to the money.' " (The agent referred to in the excerpt just quoted is Pomerici.)

Grover Gibson died April 21, 1925. Liability then arose in the sum of $200 on one policy and in the sum of $80 on the other, plus $2.40 unearned premium. An undertaker's bill of $145 was incurred in the funeral. April 22, 1925, Hattie Gibson (mother), as "legal beneficiary," executed a paper of authority to the undertaker "to draw receipt for and receive" from the company the sum of $145 "out of" the policies in payment of that bill. That paper was proved up by the company by its witness Watson, the undertaker in whose favor it was drawn. Upon direct examination he said that he prepared it at the request of Hattie Gibson, and on cross-examination he said that Hattie "wanted that paper executed because she was the beneficiary * * * because the insurance company would not pay the undertaker until that paper was executed." Except for what might be inferred from the circumstance and the testimony just given, there is nothing to show that, prior to its execution and presentation to the company, Hattie Gibson had made any demand or given notice of her claim. The amount was paid to the undertaker by the company in November, 1925, on the authority mentioned, and also on the authority of Airillar Gibson. The balance, $137.40, was, at the same time, paid to Airillar. The policies with receipts were produced by the company.

Hattie Gibson brought suit for recovery of the full amount of the policies. She advanced two theories, each of which was combated with the stipulations described: (a) Her substitution as beneficiary, and (b) sole "heirship," with charges that Airillar had never been Gibson's wife, and therefore lacked insurable interest within the knowledge (actual or constructive) of the company. Verdict in favor of the company was instructed, and the judgment thereon was reversed (and the cause remanded) by the Court of Civil Appeals. 294 S. W. 923.

1. A change of beneficiary, effectuated in harmony with the stipulations, would require an agreement, for it would be made by the "insured with consent of the company" manifested in a certain way. A meeting of minds would be requisite, and a dead man could not make the essential contribution. If made at all in that way, it was made prior to Grover's death. But of this there is no evidence. In this respect, the case is unlike that of Splawn v. Chew, 60 Tex. 532, 536, or that of Price v. Supreme Home of Ancient Order of Pilgrims (Tex. Com. App.) 285 S. W. 310, wherein ex parte changes were approved; it is comparable to the cases of Flowers v. Sovereign Camp, W. O. W., 40 Tex. Civ. App. 593, 90 S. W. 526, and Wooden v. Wooden (Tex. Civ. App.) 116 S. W. 627. See, also, Anderson v. Grand Lodge, U. B. of F. (Tex. Civ. App.) 248 S. W. 461.

[1] But that liberty of contract which belongs to able-minded persons, it may be said in general, is not exhausted by one user; it persists to uphold subsequent agreements operating novations, waivers, etc. Groce v. P. B. Yates Mch. Co. (Tex. Com. App.) 288 S. W. 161. The præsenti stipulations against futuro alterations, etc., did not preclude change of beneficiary in a manner differing from that originally named, but a change worked out in that manner, obviously, would require a remeeting of the minds, and this could not happen subsequent to death of one essential party.

The question, then, is whether the fact of requisite new agreement became issuable.

[2] 2. Pomerici's authority had so narrow a range as that his knowledge and conduct (described in Ollie's testimony) ought not be made the knowledge and conduct of his principal (M., K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518; Id., 89 Tex. 428, 35 S. W. 6) on the evidence recited in the opinion of the Court of Civil Appeals.

But on the day after Grover's demise, Hattie Gibson represented herself to be the "legal beneficiary." That representation was communicated to the insurer at an undisclosed date, but on a date which a trier of facts might say closely followed its making. Compare Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138, and Craycroft v. Crawford (Tex. Com. App.) 285 S. W. 275, 279. It was acted upon at a later time by the insurer in making payment of funeral expenses.

[3] The insurer knew that Hattie Gibson became beneficiary prior to Grover's death, if she became such at all, and that she did so because Grover had then so requested and it had consented. Its action upon Hattie's authority to pay the undertaker's bill might be taken, then, as some evidence: (a) Of knowledge in fact of Grover's offer; and (b) of its own acceptance—all before Grover's death.

[4] The circumstances mentioned supplied

that element which was lacking in Ollie's testimony separately considered, and in the sum of the evidence is to be found a fact hypothesis of effectual substitution of beneficiary to be weighed against the hypothesis set up in Pomerici's denial of truth in Ollie's statement.

We recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.