## J. M. RADFORD GROCERY CO. v. CITIZENS' NAT. BANK OF ODESSA.

### No. 2512.

Court of Civil Appeals of Texas. El Paso.
March 19, 1931.

Rehearing Denied April 16, 1931.

W. E. Lessing, of Abilene, and B. Frank Haag and Frank Stubbeman, both of Midland, for appellant.

C. W. Tate, of Odessa, and G. W. Dunaway, of Midland, for appellee.

HIGGINS, J.

This is the second appeal in this case. See Citizens' Nat. Bank v. E. V. Graham & Co., 25 S.W.(2d) 636, 637. The nature of the case and the question at issue are stated in the opinion upon the former appeal as follows:

"Appellant brought this suit against the individuals composing the partnership of E. V. Graham & Company upon certain notes executed by said company, and to foreclose a deed of trust dated March 26, 1927, upon land securing payment of the notes.

"The J. M. Radford Grocery Company had a deed of trust upon the same land, dated May 9, 1928, securing indebtedness to it of Graham & Co., filed for record May 14, 1928. Plaintiff's deed of trust was filed for record October 4, 1928.

"Plaintiff joined the J. M. Radford Grocery Company as a party, defendant asserting it had notice, actual or constructive, of plaintiff's prior deed of trust. As between plaintiff and the grocery company, the issue was as to the priority of their respective liens, which issue was dependent upon the question of notice."

The present appellee was the appellant upon the former appeal.

The last trial resulted in judgment of foreclosure in favor of the bank and the grocery company with priority awarded the lien of the bank.

The land involved is section 11, block 42, township 3 south, Texas & Pacific Railway Company survey in Ector county.

The evidence is sufficient to show that, prior to the time appellant acquired its deed of trust, U. N. Shanks, one of appellant's traveling salesmen, had actual notice of the prior unrecorded deed of trust in favor of the bank.

Appellant challenges the sufficiency of the evidence to show Shanks had any authority to act for it in the matter, and that therefore the notice to him will not be imputed to appellant.

With reference to the principle thus invoked, Justice Denman, in Missouri, K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518, 519, said: "The general rule is that notice to the agent is notice to the principal. The word 'agent,' as used in this connection, means the person who has power to act for the principal with reference to the very subject-matter to which the notice relates, and does not include a person who has no such power, though he may have power to act for the principal with reference to similar subjects. The words 'agent' and 'act' are from the same root, and the above limitation of the use of the former is inherent in its derivation."

On May 9, 1928, the date of appellant's deed of trust, Graham & Co. were heavily indebted to the grocery company, several thousand dollars of the indebtedness being evidenced by nineteen notes, some of which were then past due and several thousand dol-

lars being upon open account and past due. Upon that date Rupert Harkrider, appellant's secretary, went to Odessa to secure adjustment of the indebtedness. The open account was closed by Graham & Co. executing twelve notes for $500 each, dated May 9, 1928, one maturing June 15, 1928, and one maturing on the 15th of each month thereafter. The deed of trust was executed to secure the payment of all of the notes mentioned.

Henry Pegues, appellee's cashier, testified:

"Mr. Shanks was acting as salesman and doing collecting for the J. M. Radford Grocery Company in this district. He handled collections through my bank against E. V. Graham & Company and other customers in this town of the J. M. Radford Grocery Company. * * *

"As to having any other transaction with him regarding J. M. Radford Grocery Company's business: We sold him a good many drafts for J. M. Radford Grocery Company, payable to J. M. Radford Grocery Company. We didn't execute Cashier's checks. We was making remittances to J. M. Radford Grocery Company. I knew he was a salesman. As far as his business being to take orders for Radford Grocery Company, I never did buy anything from him. I did not know whether he was a Director of J. M. Radford Grocery Company. As to knowing what his duties were: I just know what he did here, but don't know what he was supposed to do here. Our relations were merely selling him drafts for these checks, and he came in with checks insufficient that had been sent in to J. M. Radford Grocery Company and we turned them in insufficient and Shanks brought them back to us. That is all the dealings we had with him. * * *

"In my dealings with Mr. Shanks as a representative of J. M. Radford Grocery Company, he endorsed checks made payable to the J. M. Radford Grocery Company, "By Shanks." I cashed those checks. That authority was never questioned by J. M. Radford Grocery Company. I had had those kind of dealings with him for quite a while, at least a year."

Rupert Harkrider testified:

"I am secretary of the J. M. Radford Grocery Company. My duties in connection with J. M. Radford Grocery Company are in the capacity of credit man. By 'credit man', I mean I handle the accounts and generally have charge of the accounts and the adjustment of them. I am also the Secretary of the Company. I am the officer of the corporation whose duty is the granting of credits and adjustment of accounts. No one else is empowered by the corporation to do that. As to remembering the condition of E. V. Graham & Company with J. M. Radford Grocery Company the latter part of 1927: I know that they owed us considerable money, part in

notes and part in open account. I went down to get that straightened out in the spring of 1928. At that time the company had not delegated that transaction to any other person. I handled that myself. * * *

"I did not have any notice, whatever, of the Citizens National Bank claiming any lien on that land. * * *

"The business of the J. M. Radford Grocery Company is conducted by a Board of Directors. I know Mr. Shanks that they spoke about. His initials are 'U. N.' He was neither a director nor an officer of the company, but at one time he worked for the company. He worked first in the warehouse in Big Spring and later as a salesman in this territory. As a salesman he sold goods and collected what we call 'weekly' accounts—the smaller accounts. He did not have any authority to make adjustments for J. M. Radford Grocery Company of accounts, releases, or take deeds of trust, nor bind the company to release a deed of trust. His duties were the duties of an ordinary salesman to sell goods and nothing else. The Board of Directors, or the President, or possibly myself, if anybody, had the authority to delegate the adjustments and collection of accounts at that time. As to whether or not the Board of Directors had delegated to Shanks: * * * I am custodian of those records and there is nothing in them to that effect. I never did delegate to him any such authority myself."

E. V. Graham, a member of the firm of Graham & Co., testified: "Sometime in the latter part of 1928, about the 9th of May, I remember having had a transaction with Mr. Harkrider—it was about the first of May. Mr. Harkrider came to my place of business. He wanted the account secured and we told him we would give him security on section eleven. As to contemplating buying further merchandise from J. M. Radford Grocery Company; I believe we were to pay cash in the future for further merchandise. It was to close up the present account and our understanding was to pay for future merchandise. As to who mentioned the giving of security for the indebtedness: Mr. Harkrider talked of the security and we told him we would give a section of land—section eleven, block forty-two, township three-south, T&P Ry Co. survey, the land in controversy. In regard to there being any conversation between Harkrider and myself about any lien on the land at that time: I said there was nothing against it, as I had looked up the records and nothing was against it."

J. A. T. Evans testified:

"I am a partner in E. V. Graham & Company. I remember about Mr. Harkrider coming down in May, 1928, regarding security for the J. M. Radford Grocery Company account.

"Question: Was anything said then to Mr. Harkrider by you? You were present at the time? Answer: Yes, In regard to anything being said to Mr. Harkrider concerning liens on Section 11, Block 42: Mr. Harkrider brought his statement of account to have a settlement and we agreed on making notes to cover the amount. We agreed to give him a deed of trust. As to stating to him, at the time we gave him the deed of trust, that there were no other liens except the Federal Land Bank on that land; Mr. Graham went out to examine the records and came back and reported there wasn't anything against it except the Federal loan.

"Cross-examination:

"That was what Graham said, yes.

"Redirect examination:

"It is correct that you told Mr. Harkrider there were no liens against that section except the Federal Land Bank lien. * * *

"I had some acquaintance with a fellow by the name of Shanks that worked for J. M. Radford Grocery Company, but not very much. I wasn't very friendly to him, didn't know him very well. I kept the books for E. V. Graham & Company. Along that time E. V. Graham & Company was in pretty hard shape financially. I can't recall anything about Mr. Shanks collecting for J. M. Radford Grocery Company. I knew he was a salesman but, of course, we had a good many collectors then and I can't recall him particularly. I don't remember anything like him bringing any checks back to me that had been returned by the bank unpaid."

■ The foregoing shows all of the material facts bearing upon the issue of Shanks' authority. It shows that he was merely a traveling salesman for the Radford Grocery Company with authority to sell goods, collect small weekly accounts, and remit the collections to appellant in the manner shown by the testimony of Pegues. It is wholly insufficient to show that he had any authority whatever with respect to the adjustment or settlement of accounts such as that of Graham & Co. We are of the opinion the authority of Shanks was not such as that notice to him of appellee's unrecorded deed of trust would be imputed to appellant. Missouri, K. & T. Ry. Co. v. Belcher, supra; Luling, etc., Co. v. Lane & Bodley Co., 49 Tex. Civ. App. 534, 109 S. W. 445.

In addition to actual notice appellee pleaded constructive notice, but no such issue was submitted nor requested to be submitted, and we fail to find any fact of which appellant had notice that would have put it upon inquiry. That issue is not raised by the evidence.

■ Only one other question need be considered, namely: The insistence of appellee that appellant's deed of trust was to secure an antecedent indebtedness and, therefore, not supported by a valuable consideration. The evidence quoted shows without contradiction that twelve notes were accepted in settlement of the indebtedness of about $6,000 then due upon open account. The extension of the time of payment effected in this manner constituted a valuable consideration and entitled appellant to protection against appellee's prior unrecorded deed of trust. This is well settled. Steffian v. Bank, 69 Tex. 517, 6 S. W. 823; Brooks v. Asherton State Bank (Tex. Civ. App.) 278 S. W. 473; Watts v. Corner, 8 Tex. Civ. App. 588, 27 S. W. 1087; Ridgill v. E. L. Wilson, etc., Co. (Tex. Civ. App.) 178 S. W. 668, 669; Farmers' Nat. Bank v. James, 13 Tex. Civ. App. 550, 36 S. W. 288.

The case has been twice tried and the evidence upon the controlling issues seems to have been fully developed.

Accordingly the judgment is reversed and here rendered so as to accord priority to the lien of appellant's deed of trust in so far as it secures the twelve notes for $500 each signed by E. V. Graham & Co., and dated May 9, 1928. In no other respect is the judgment disturbed.

Reversed and rendered.

### On Motion for Rehearing.

Both parties filed motions for rehearing. That of the bank presents nothing new, and calls for no comment. The Radford Grocery Company calls attention to the fact that its deed of trust provides that it is contemplated that Graham & Co. would thereafter become indebted to the grocery company in further sums, and that the deed of trust was to be security for the payment of such future indebtedness. Attention is called to the further fact that the claim of the grocery company embraces a balance of $1,470, for goods, wares, and merchandise sold to Graham & Co. subsequent to May 9, 1928. It is insisted priority should be accorded to the deed of trust in so far as it secures this balance.

■ The grocery company is in the attitude of seeking to postpone the prior unregistered deed of trust of the bank to the company's deed of trust upon the theory that the company is a creditor for value without notice. The burden of proving these facts rests upon the grocery company. Holland v. Nance, 102 Tex. 177, 114 S. W. 346; Ryle v. Davidson (Tex. Civ. App.) 116 S. W. 823; Keller v. Lindow (Tex. Civ. App.) 133 S. W. 304; Wilkerson v. Ward (Tex. Civ. App.) 137 S. W. 158; Bledsoe v. Haney (Tex. Civ. App.) 139 S. W. 612.

■ As to this item of $1,470 it was thus incumbent upon the grocery company to show that, at the time the sales were made upon open account and the credit extended, it was without notice of the prior unrecorded deed of trust of the bank. This the evidence does

not show. The evidence shows that at the time the grocery company acquired its deed of trust on May 9, 1928, it was without notice of the prior unrecorded deed of trust of the bank. Further than this the evidence upon the issue of notice is silent. It is therefore, upon the record here presented, not entitled to the additional relief sought in its motion for rehearing.

Both the motions are overruled.