No. 5521,

## GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.* S. T. TRAWICK.

1. COMMON CARRIERS.—A railway company is bound, as a common carrier, to receive and transport live animals, when offered for transportation from one point to another in Texas, as other property, and is liable, after receiving them, as an insurer against loss from any cause, except the act of God or of the public enemy, the act of the owner of the stock, or the vicious propensities or inherent character of the animals. This liability a railroad company can not limit by special contract, even in regard to matters concerning which it might legally contract at common law.

2. COMMON CARRIER.—Since the statutes do not forbid the making of a contract prescribing a time after which a fixed liability incurred by a common carrier shall not be enforced by suit, the only limitation on the validity of such a contract, when made on sufficient consideration, is that it be reasonable as to the period of time stipulated. See opinion for such a contract *held* to have been reasonable.

APPEAL from Lampasas. Tried below before the Hon. W. A. Blackburn.

*Matthews & Wood,* for appellant: On their proposition that when the defendant, as in this case, shows that it furnished suitable cars, which were run at a reasonable speed, and exercised that degree of care which the nature of the property required, it is not responsible for injury to cattle transported by it, cited Missouri Pacific Railway Company v. Harris, White & Willson's Condensed Reports, section 1257; Cragin v. New York Central Railroad Company, 51 New York, 61 (10 Am. Rep., 559); Louisville, Cincinnati & Dayton Railroad Company v. Hedger, 13 American Law Register, 145; Kendall v. L. & S. W. Railroad, 2 Moak, 705; Rixford v. Smith, 52 New Hampshire, 355 (13 Am. Rep., 51, and notes); Penn v. Buffalo & Erie Railroad Company, 49 New York, 204 (10 Am. Rep., 355); Railroad Company v. McDonough, 21 Michigan, 165 (4 Am. Rep., 466); Evans v. Fitchburg Railroad Company, 111 Massachusetts, 142 (15 Am. Rep., 19).

On their proposition denying the right of appellee to bring its suit after the time limited in the contract, they cited Galveston, Harrisburg & San Antonio Railway Company v. Harmon, 3 Texas Law Review, 216; Missouri Pacific Railway Company v.

Harris, White & Willson's Condensed Reports, section 1257; Texas Central Railway Company v. Morris, White & Willson's Condensed Reports, section 374; Missouri Pacific Railway Company v. Scott, 4 Texas Law Review, 286; Dawson v. St. Louis, Kansas City & Northern Railroad Company, 76 Missouri, 514.

*A. J. Peeler,* for appellee, cited as to railroads in this State not limiting liability as common carriers, Constitution, article 10, section 2; Revised Statutes, articles 277, 278; White & Willson's Civil Cases, sections 1257–1259; Gulf, Colorado & Santa Fe Railroad Company v. Maetze, 5 Texas Law Review, 176.

As to liability of carriers of live stock, according to strict rule of common law, for all injuries not occasioned by the peculiar nature and propensities of the animals, Toledo, Wabash & Western Railway Company v. Durkin, 76 Illinois, 395; McCoy v. Keokuk & Des Moines Railroad Company, 44 Iowa, 424; Evans v. Fitchburg Railroad Company, 111 Massachusetts, 142; Clarke v. Rochester & Syracuse Railroad Company, 14 New York, 570; Mynard v. Syracuse, etc., Railroad Company, 71 New York, 180, distinguishing the case of Cragin v. New York Central Railroad Company; Bills v. New York Central Railroad Company, 84 New York, 5; 23 American Law Register, December, 1884, page 753, and authorities cited; 19 Central Law Journal, 167, and authorities cited.

STAYTON, ASOCIATE JUSTICE.   This action was brought by the appellee to recover damages for injury to cattle in course of transportation from Navasota to Lampasas; for cattle alleged to have been lost through a defective stock pen at the place of shipment, and cost of passage for himself, he alleging an agreement to give him passage free of charge other than that made for transporting the cattle, and that the train, on which his cattle were, left Navasota without him, through the negligence of the employes of the appellant.   The cattle were shipped under a special contract, as it is claimed, at a rate lower than the regular rate.

By this contract the appellant sought to make its liability only that of a private carrier, and to release itself from liability for any delay in receiving, shipping or transporting the cattle, or for injury to them, caused otherwise than through fault or negligence of its officers, agents or employes.

It attempted to bind the shipper to accept such cars as the

company might furnish for transportation of the cattle, and to relieve the carrier from liability for loss resulting from heat, suffocation or other ill effects caused by the animals being crowded in the cars, or on account "of being injured by burning of hay, straw or other material used by the owner for feeding the stock, or otherwise, and all risk of damage which may be sustained by reason of any delay in such transportation, whether occasioned by any mob, strike or threatened violence to person or property, from any source, to track or yards, and all risk of escape or robbery of any portion of said stock, or of loss or damage from any other cause or thing not resulting from the willful negligence of the agents of the carrier."

It attempted to bind the shipper to load, unload and reload the stock at his own risk and at his own risk to feed, water and attend to them while in stock yards, on the cars and at feeding and transfer points; and it further attempted to impose upon the shipper the duty of seeing that the stock was securely placed in the cars the carrier might furnish, and so to fasten the cars as to prevent the escape of animals therefrom. It also provided that laborers furnished by the carrier to load and unload the stock should be deemed the employes of the shipper; and that "*as a condition precedent to his right to recover* any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station agent, before said stock is removed from its place of destination above mentioned, or from the place of delivery of the same to said party of the second part, and before such stock is mingled with other stock."

The statutes of this State provide that "Railroad companies and other common carriers of goods, wares and merchandise, for hire, within this State, on land or in boats or vessels on the waters entirely within the body of this State, shall not limit or restrict their liability, as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, *or in any other manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid.*" (Rev. Stats., art. 278.)

That railroads are common carriers is determined by the Constitution and laws of this State, as well as by the nature of the business in which they are engaged, is not an open question, and their duties, obligations and liabilities resulting from this public

character attach, when animals are tendered or received for transportation, as fully as do they in reference to other classes of property tendered or received for transportation.

As has been correctly said: "The law has introduced by implication into every contract for the carriage of goods, an exception to the carrier's liability in cases where the loss to them, whilst in his charge, has been occasioned by the act of God or of the public enemy, or by their own decay from an inherent infirmity, or by the fault of the owner himself, so it has, from the necessity and justice of the case, introduced an exception in favor of the carrier of live stock of accountability for its loss or injury resulting from its own uncontrollable vicious propensities, and the damages incident to it carriage from its inherent natural character." (Hutchinson on Carriers, 222.)

Under the statute of this State, a railway company must receive and transport live animals as other property, and, after receiving, it becomes an insurer of them, as in the case of other property which it is bound to transport, against loss from any cause except the act of God, or of the public enemy, the act of the owner, vicious propensities or inherent character or as it is sometimes termed the "proper vice" of the animals. This is the liability imposed upon the common carrier by the common law, and the statute declares that the "liabilities of carriers in this State shall be the same as prescribed by the common law." (Rev. Stats., 277.) Such being "their liability as it exists at common law," the declaration of the statute that they "shall not limit or restrict their liability as it exists at common law in any manner whatever, and that "no special agreement made in contravention of the foregoing provisions of this article shall be valid" deprives such carriers of the right to limit their liability by contract, even as to matters in reference to which they might legally contract under the common law.

The common law duties and liabilities, and not those duties and liabilities as they may be affected by contracts, lawful under the common law, are the duties and liabilities of common carriers under the statutes of this State, and they can not be restricted or limited by any contract or agreement whatsoever, in cases to which the statute is applicable. The rule may seem a harsh one, but be that as it may, the Legislature of this State has established it, and courts have no power or right to refuse to enforce it, or to place a construction on the statute which its language does not authorize.

The duties and liabilities imposed on common carriers are inseverable. A failure of duty resulting in loss to the shipper fixes liability; and, if by contract, duties imposed by the common law may be dispensed with, then a restriction or limitation of the common law liability would necessarily follow to the extent to which duty existing without contract might be dispensed with by it. (Railway Company v. Harris, 2 S. W. Rep., 567.) The carriage, in this case, was wholly within this State, and the statute is directly applicable to it.

The special contract, in so far as we have given in substance its terms, was invalid, and, therefore, can not shield the appellant from any liability that would have existed had it not been made.

The contract further provides as follows: "It is further hereby and herein expressly provided and mutually agreed that no suit or action against this company, for recovery of any claim by virtue of this contract, shall be sustained in any court of law or chancery, unless such suit or action shall be commenced within forty days next after the damage shall occur, and should any suit or action be commenced against this company after the expiration of the aforesaid forty days, the lapse of time shall be taken and deemed conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

If this clause of the contract, within the meaning of the statute, does not limit or restrict the liability of the carrier as it exists at common law, it must determine the right of the shipper to maintain this action, unless it contravenes some rule founded on public policy.

By "liability, as it exists at common law," we understand to be meant such state and degree of legal responsibility as the common law fixes upon the carrier under a given state of facts. The word "limit" ordinarily means to fix the extent of the subject to which it is applied, rather than to fix the duration of time within which a right, growing out of the subject, may be enforced; and, as used in the statute, may mean no more than that the carrier shall not relieve himself, by contract, from obligation to make such full compensation for breach of duty as the common law would impose under the facts in the given case. The word, however, ordinarily has much the same signification as the word "restrict;" but the inference, arising from the use of both words in connection and in relation to the

same subject is, that they were not used as exact equivalents.

The word "restrict" means "to restrain within bounds;" and, as used in the statute, in connection with the carrier's liability, before declared, was evidently used to prohibit the carrier from so contracting as to make his liability to depend on facts other than such as would fix liability under the settled rules of the common law.

In case of contract, the facts made necessary by it to the existence of legal obligation, become restraints or restrictions on legal liability if, in the absence of contract, liability, under the settled rules of the common law, would be fixed by the existence of facts other than made requisite to liability by the contract.

The statute fixes the boundaries of fact which will impose liability on the carrier, by making it to depend on the facts sufficient to create it under the rules of the common law; and a contract which, if given effect, would defeat liabilities thus arising, would be invalid.

A contract, however, which does not in any way, if given effect, defeat the complete vestiture of the right to recover from a common carrier for a breach of duty that at common law would give it, does not operate as a restriction on the common law liability of the carrier, even though it may require the assertion of that right, by action, at an earlier period than would be necessary to defeat it through the operation of the ordinary statutes of limitation.

In the case before us, so much of the contract as sought to limit or restrict the liability of the carrier as it exists at common law being invalid, the liability of the carrier was fixed; and, under the terms of the contract, the shipper might have enforced it by action at any time within forty days after he sustained injury. The statutes of this State only forbidding such contracts as would limit or restrict the common law liability of carriers, we see no reason why contracts executed upon sufficient consideration and reasonable in character, looking only to the time within which such liability may be enforced, should not be held valid. There is no rule of the common law which forbids such contracts.

In England, and in many of the States in this Union, in which there are not statutes forbidding the making of contracts limiting or restricting the carrier's common law liability, it has

been held that even contracts having such effect, were valid if reasonable in character.

Under the statutes of this State such contracts, whether reasonable or not, can have no standing, for the simple reason that the common law liability of the carrier, and not the liability as the carrier might fix it by contract under the common law, is by the statutes of this State imposed on the carrier.

The classes of cases, to which we have referred, illustrate, however, the fact that, in the absence of statutory prohibition, carriers may make contracts reasonable in their nature.

It has been held in many cases that a carrier may make a contract which will relieve him from liability for loss or injury to property received for transportation, unless claim be made within a named period after the loss occurred. (Express Co. v. Caldwell, 21 Wall., 264; Dawson v. Railway Co., 76 Missouri, 516; Express Co. v. Hunnicutt, 54 Mississippi, 566; Express Co. v. Harris, 51 Indiana, 127; Westcott v. Fargo, 61 New York, 551.) In these cases the periods within which claim was required, ran from five to sixty days, and under the facts of the cases, the periods were deemed reasonable.

It has been held in many cases in which contracts had been made between persons, other than carrier and shipper, by which a period shorter than that prescribed by the statutes of limitation had been fixed within which actions must be brought or the right to do so barred, were valid. (Riddlesbarger v. Insurance Co., 7 Wall., 389; Insurance Co. v. La Croix, 35 Texas, 249; Ward on Limitation, 80; Greenhood on Public Policy, 505.) In the notes given by these elementary writers cases are fully cited. The unequal position of the carrier and shipper, and the public nature of the carrier's business, furnish the grounds on, which their right to contract as to them seems proper, in the absence of a statute regulating the matter, ought to be denied, and the only grounds on which the reasonableness of their contracts ought to be inquired into. As the statutes of this State do not forbid the making of contracts prescribing a time after which a fixed liability shall not be enforced by action, it seems to us that the only inquiry which can be made, in reference to such contracts, when executed upon sufficient consideration is, are they reasonable?

The injuries complained of occurred on May 3 or 4, 1884, and this action was not instituted until the eleventh of November following. The run from Navasota to Lampasas required less

than twelve hours; the plaintiff resided at and reached Lampasas on the evening of the fourth of May, 1884, and had means promptly to ascertain the extent of the injury, and no reason is shown why the action was not sooner brought. The defendant pleaded the failure to bring the action within the time prescribed by the contract as a bar to it, and the sufficiency of this defense was questioned by a demurrer, which the court overruled. This would indicate that the court was of the opinion that the answer set up a good defense, and that the time within which the contract required the action to be brought was reasonable. It seems to us, under the facts of this case, that these conclusions were correct.

The court was asked to give an instruction as to the effect of the failure of the plaintiff to institute an action within the time prescribed by the contract, and this was refused, notwithstanding the court had failed to give any charge bearing on that defense.

We are of the opinion that a charge should have been given upon that subject, and, for the failure of the court to do so, its judgment will be reversed and the cause remanded.

*Reversed and remanded.*