TEXAS & P. RY. CO. v. LANGBEHN.

(Court of Civil Appeals of Texas. Galveston. May 20, 1912. On Motion for Rehearing, Oct. 11, 1912. Appellee's Motion for Rehearing Denied Oct. 31, 1912.)

1. CARRIERS (§ 182*)—DOMICILE OF PARTIES —PRIVILEGES OF DEFENDANTS.

Under Acts 29th Leg. c. 25, § 1, providing that where freight has been transported by two or more carriers an action for damages or loss may be brought against any one or all of the carriers in any county in which either of the carriers does business, a suit may be brought against any one or all of the carriers in any county in which either is operating its road, without joining as a defendant a carrier whose line extends into the county where the suit is brought, or which has a local agent or its principal office in such county.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 182.*]

2. CARRIERS (§ 160*)—CARRIAGE OF FREIGHT —CONTRACT OF LIMITATION—VALIDITY.

Under Rev. St. 1895, art. 3378, making it unlawful for any one to make any agreement shortening the period of limitation to a shorter period than two years, a stipulation in a contract for the carriage of freight that, unless suit is brought within two years of the accrual of the cause of action, it shall be barred is valid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 231, 673; Dec. Dig. § 160.*]

3. CARRIERS (§ 96*) — TRANSPORTATION OF FREIGHT—TIME OF DELIVERY—REASONABLE TIME.

Where no time for delivery is fixed in a contract of carriage, the carrier must transport and deliver in a reasonable time.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 396–426; Dec. Dig. § 96.*]

4. CARRIERS (§ 159*)—CARRIAGE OF FREIGHT —NOTICE OF CLAIM FOR DAMAGES—STIPULATIONS—VALIDITY.

Under Rev. St. 1895, art. 3379, providing that no stipulation in any contract requiring notice of any claim for damages, as a condition precedent to the right to sue, shall be valid, unless the stipulation is reasonable, and any stipulation fixing the time within which notice shall be given at a less period than 90 days shall be void, a stipulation in a contract of carriage that no suit shall be sustained, unless notice shall be given before the expiration of 90 days from the date of accrual of the claim, is invalid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 668–672, 699–703½, 711–714, 718, 718½; Dec. Dig. § 159.*]

On Motion for Rehearing.

5. CARRIERS (§ 99*) — TRANSPORTATION OF FREIGHT—TIME OF DELIVERY—REASONABLE TIME.

In determining what is a reasonable time for the transportation and delivery of freight, under a contract fixing no time for delivery, extraordinary conditions, notice of which was not given to the shipper at the time of shipment, cannot be taken to enlarge the time of delivery beyond the time allowed under usual or ordinary conditions.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 415–426; Dec. Dig. § 99.*]

6. CARRIERS (§ 159*)—CARRIAGE OF FREIGHT —TIME OF DELIVERY—ACCRUAL OF CAUSE OF ACTION.

A contract for carriage of freight did not fix the time for delivery. The usual time for delivery was from 10 days to three weeks.

Because of extraordinary conditions of congestion of traffic, the reasonable time for delivery was from 30 to 90 days. There was much correspondence relative to the nondelivery, and the agent at the point of destination was repeatedly advised of the nondelivery of the freight, and he advised the shipper that the freight would be traced and delivered as soon as found. Held, that a cause of action for nondelivery accrued on the expiration of the reasonable time as found by the court; and an action instituted more than two years thereafter was barred under the contract of shipment, stipulating that, unless suit was brought within two years of the accrual of the cause of action, it should be barred.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 668–672, 699–703½, 711–714, 718, 718½; Dec. Dig. § 159.*]

7. TRIAL (§ 398*) — FINDINGS — CONCLUSION OF LAW.

A finding that an action was instituted before the expiration of two years from the date of the breach of contract, as stipulated therein, is a conclusion of law, and will not control specific findings of fact as to the date of the breach.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 946, 947; Dec. Dig. § 398.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by J. H. Langbehn against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed in part, and rendered in part.

Wilson & Dabney, of Houston, for appellant. Stewarts, of Galveston, for appellee.

REESE, J. This suit is by J. H. Langbehn against the Texas & Pacific Railway Company to recover the value of certain cotton alleged to have been shipped from Merkel, Tex., and from Colorado, Tex., to Galveston, Tex., and never delivered. Upon the trial, without a jury, there was judgment for plaintiff for $411, from which defendant appeals.

It was alleged that on October 11, 1906, J. F. Witherspoon delivered to the defendant at Merkel, Tex., 277 bales of cotton, marked "DONE," to be shipped to Galveston, Tex., to shipper's order, for which defendant executed its bill of lading No. 75; that on October 16, 1906, Campbell & Cleaver delivered to defendant, at Colorado, Tex., 50 bales of cotton, marked "EKT," to be shipped to Galveston, Tex., to shipper's order, for which defendant executed its bill of lading No. 69; that on or about April 24, 1907, Gussoni & Co. delivered to defendant, at Colorado, Tex., three bales of cotton, marked "LKWB," to be shipped to Galveston, Tex., to shipper's order, and defendant executed its bill of lading D898 therefor; that plaintiff made numerous demands from time to time, after lapse of a reasonable time, for delivery of said cotton, but that three bales of the cotton marked "DONE," of the market value of $218.67, were not delivered, and that ten bales of the cotton marked "EKT," of the market value of $1,280, were not delivered, and that the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

three bales marked "LKWB," of the market value of $147, were not delivered; that by accepting for through transportation said shipments, and issuing bills of lading therefor, defendant promised and became bound to perform said contract in Galveston county, Tex., by delivering said cotton at Galveston; that each of the said shippers, for value, indorsed and delivered the bills of lading to Langbehn Bros., whereby Langbehn Bros. became entitled to receive from defendant, and defendant became obligated to deliver, said cotton within a reasonable time; that from October, 1906, to February, 1907, there existed in the yards and upon the tracks of the various transportation companies at and near Galveston a congestion of cars, to such an extent that it was rendered impossible for the railroads to deliver freight with any degree of promptness, and that reasonable time for the delivery of the 277 bales and the 50 bales shipped in October, 1906, would have been about April 1 or 15, 1907; that defendant could not have been held liable in an action for breach of contract or delay before the said date of April, 1907, and therefore plaintiff's cause of action did not arise prior to April, 1907.

The petition was filed February 11, 1909. Defendant filed its plea of privilege, alleging that its domicile and principal office was in Dallas county, Tex.; that no part of its line extended into Galveston county; and that it had no agency or representative in Galveston county, and negativing the existence of any exception to the general provisions of the statute which would authorize suit against it in Galveston. Defendant also pleaded a general denial, and specially denied, under oath, that the International & Great Northern Railway Company was its agent, or that there was any partnership between them. Defendant further pleaded the two-year statute of limitation in bar of the action, and also that there was a special contract that no action should be brought for breach of the contract after two years from the date of the breach; and also pleaded in bar the failure of plaintiff to give notice in writing of the claim sued on before the expiration of 90 days from the date of the accrual of the claim.

By supplemental petition plaintiff pleaded "that plaintiff and defendant corresponded at great length concerning the claims now sued on from about October 18, 1907, almost continuously to the time of filing suit; that all such correspondence related to and constituted a claim in writing, and which notice was given before the expiration of 90 days from a reasonable time within which defendant could and should have delivered the cotton described in the petition in this cause, and, furthermore, by said correspondence defendant did waive the provisions in the bills of lading requiring notice of suit, in that defendant, its officers, agents, employés, and representatives, agreed to trace for and account to plaintiff for said cotton; that defendant's representatives, from time to time, did verbally promise plaintiff to trace for said cotton, and requested plaintiff to defer filing suit therefor, promising plaintiff that the cotton would be properly traced, and when found would be delivered to plaintiff, and plaintiff relied upon such representations, both verbal and written, and delayed filing suit until February 11, 1909, all of which matters and things so pleaded having been relied upon by plaintiff and induced plaintiff to delay filing suit until February 1, 1909;" and, further, that the 90-day limitation clause in the contract, for giving notice, was unreasonable.

The trial court, at the request of defendant, filed conclusions of fact and law. None of the conclusions of fact are objected to by either of the parties, and they are hereby adopted by us as our conclusions, and, so far as material to the questions presented, are as follows:

"The Texas & Pacific Railway Company, defendant, at the time of the institution of this suit, February 11, 1909, and of the service of citation on said defendant and the filing of the plea to the venue, and at the time of the trial of the cause, the domicile and principal office and principal place of business of said defendant was in the city of Dallas, in Dallas county, Texas, and not in Galveston county, Texas. That neither the said railway, nor any part of same, extends into or is operated through the county of Galveston, Texas. At the time of the institution of the suit, and since said date, said defendant has at no time had an agency or representative or an agent in Galveston county, Texas, appointed by it.

"Said railway runs from Bowie county to El Paso county, Texas; and the defendant had, at the institution of this suit and since, an agent in the various counties through which its lines run, to wit, in Tarrant county, in Dallas county, and in other counties through which said road runs.

"Through bills of lading were made, executed, and delivered by defendant, one numbered D898, at Colorado, Texas, dated April 24, 1907, to Gussoni & Co., for delivery to shipper's order, notify J. H. W. Steele, or their assigns, at Galveston, Texas, for 3 bales of cotton marked 'LKWB'; another at Merkel, Texas, dated October 11, 1906, numbered 75, to C. F. Witherspoon, for delivery to shipper's order at Galveston, Texas, for 277 bales of cotton marked 'DONE'; and both of said bills of lading were duly indorsed, transferred, and delivered to plaintiff, for value received, and in regular order of business, and he remained the owner and holder of same, and entitled to receive from defendant the cotton specified in said bills of lading.

"Each of said bills of lading contained the following provisions, among others, viz.: 'That no suit or action against the Texas & Pacific Railway Company, or any breach for damages arising from any breach of this contract, or injury to or loss or destruction of said cotton shall be sustained in any court unless notice in writing, distinctly setting forth the claim, shall be given to the nearest or any other convenient local agent of said Texas & Pacific Railway Company before the expiration of ninety days from the date of accrual of such claim; and in no event shall any suit or action in any court for damages arising from any breach of this contract, or for damages or injury to, or loss or destruction of, said cotton, or any part thereof, be sustained, unless the same shall be commenced before the expiration of two years from the date when such breach, injury, loss or destruction occurred, and the lapse of such time shall be conclusive evidence against the validity of any such claim and demand.'

"Delivery of the 3 bales of cotton or any of them, called for by the bill of lading numbered D898, was never made under said bill of lading, or otherwise. Only 274 bales under bill of lading numbered 75 was ever delivered, and the remaining 3 bales called for by said bill of lading have never been delivered.

"The shipment of cotton called for by said bills of lading numbered D898, and numbered 75, were for through shipments from points of origin named in said bills to Galveston, Texas, and that such shipments under the said bills of lading, and each of them, were intrastate shipments.

"The cotton called for in said bills of lading was delivered to the defendant at the places and on the dates given in said bills of lading. The three bales of cotton marked 'LKWB' were worth and of the value of $147, or an average of $49 per bale, and the three bales of cotton marked 'DONE' were worth $218.67, or an average of $72.89 per bale; and that all of said cotton was delivered for immediate shipment.

"No time within which shipment of cotton should be made is mentioned in any of the bills of lading; and the time, therefore, within which delivery should be made was a reasonable time.

"At the time of the respective dates of execution of said bills of lading numbered D898 and numbered 75, the defendant and the International & Great Northern Railroad Company were connecting lines for all through shipments originating at points of origin named in said bills of lading and destined to Galveston.

"Of said 277 bales of cotton embraced in said bill of lading numbered 75, and marked 'DONE,' 274 bales of said cotton were delivered by the International & Great North-ern Railroad Company to plaintiff at Galveston. The defendant claims to have delivered the 3 bales of cotton marked 'LKWB,' embraced in said bill of lading numbered D898, to the International & Great Northern Railroad Company; and that the International & Great Northern Railroad Company paid Gussoni & Co., through their agent, J. H. W. Steele, on November 29, 1907, the sum of $92.61 for loss of 2 of said bales of cotton.

"The International & Great Northern Railroad Company recognized, acquiesced in, and acted upon, such contracts for through shipment of said cotton made by defendant, and by reason thereof and the facts hereinbefore found was and became the agent of the defendant under and by virtue of article 331a, Sayles' Statutes of Texas.

"Written claim for three bales of cotton marked 'LKWB' was first filed by the plaintiff on October 18, 1907, with the defendant, and written claim for the three bales of cotton marked 'DONE' was first filed June 27, 1907, with the agent of the International & Great Northern Railroad Company at Galveston, Texas.

"During the cotton season of 1906–07, and inclusive of the dates given in said bills of lading, and extending up to as far as August or September, 1907, there was a great congestion of cotton shipments existing on the lines of the defendant, the International & Great Northern Railroad Company, and other railroads in Texas, owing to strikes on the wharves at Galveston, and on the Galveston, Houston & Henderson Railroad Company, at Houston, Texas, in the compresses throughout the state, and by reason of the shortage of cars occasioned by the unexpectedly large cotton crop raised that year and the unprepared condition of the railroads throughout the state to handle the same.

"The average time for transportation of a shipment for distances between Merkel and Colorado, Texas, on the one hand, and Galveston, Texas, on the other, would be from 10 days to 3 weeks, and the average time for transportation of cotton to Galveston from the other two points named during the congested cotton season of 1906–07 was from 30 to 90 days, though in many instances the time consumed was longer.

"The International & Great Northern Railroad Company notified plaintiff that the last of the 274 bales of cotton delivered under the Merkel bill of lading numbered 75 arrived on February 19, 1907.

"The plaintiff repeatedly advised I. M. Griffin, the agent of the International & Great Northern Railroad Company at Galveston, prior to the filing of claims, of the nondelivery of the three bales of cotton undelivered under the Merkel bill of lading numbered 75, and also the three bales of cotton marked 'LKWB,' and said agent advised plaintiff that they would trace same

and deliver to plaintiff as soon as the cotton could be found; and plaintiff relied upon such statements until it was reasonably apparent that such cotton would not be found, when claims were filed for same, as already stated.

"We further find, in this connection, that this was the usual practice and customary action with regard to shipments of cotton originating at points on the Texas & Pacific for delivery at Galveston over the International & Great Northern Railroad to plaintiff, and that often delayed cotton had been found and delivered to plaintiff; and in many instances previous to these claims in suit, where delivery could not be made, claims therefor were settled by defendant with plaintiff, without other and further notice than that given by plaintiff to the International & Great Northern Railroad agent at Galveston, and that such practice was with the knowledge of, and was recognized and acquiesced in by, defendant in all cases, and said agent's authority to receive such notice was ratified and confirmed by defendant.

"Much correspondence relative to these claims for nondelivery of 3 bales marked 'LKWB,' and 3 bales marked 'DONE,' was exchanged between plaintiff and defendant and the International & Great Northern Railroad, and between the International & Great Northern Railroad and defendant, and at no time did the defendant ever complain to plaintiff that the notice of claim, provided in bills of lading, had not been given within 90 days from date of accrual of claim for the 3 bales marked 'DONE,' nor for the 3 bales marked 'LKWB'; and we find that recognition of claim for 3 bales marked 'LKWB' was made by defendant as late as October 26, 1908, and of claim for 3 bales marked 'DONE' as late as January 15, 1909.

"We further find, however, that on April 27, 1908, defendant advised plaintiff by letter that the International & Great Northern Railroad Company had paid Gussoni & Co. for loss of one bale of cotton marked 'LKWB,' and asking that plaintiff's claim be withdrawn, but that plaintiff replied, under date of April 30, 1908, refusing to withdraw claim for 3 bales marked 'LKWB,' and asserting that plaintiff was the owner of the bill of lading and the only party authorized to receive payment for cotton upon failure to deliver. The letter of April 27, 1908, was plaintiff's first information of any attempted settlement or payment.

"By its action with reference to both the claims for 3 bales marked 'LKWB' and the 3 bales marked 'DONE,' the defendant waived the provision in each bill of lading with respect to 90 days' notice of claim.

"The notice of claim given by plaintiff to the International & Great Northern Railroad for said bales of cotton was notice to the defendant, and such notice to the International & Great Northern Railroad and the notice to defendant of the failure to deliver such cotton, and of the claims therefor, were made within 90 days from the date of the accrual of the respective claims; and such notices of claims were in full compliance with the terms of said bills of lading.

"Under and by virtue of the congested conditions attending transportation of cotton and inadequate facilities therefor on all the lines of railroads and in the compresses in Texas, by reason of extraordinary yield of cotton, and of strikes, the 90-day notice provided for in each of the bills of lading was unreasonable. And defendant, through the International & Great Northern Railroad, led plaintiff to believe and caused plaintiff to rely upon promises to trace and deliver such cotton called for by such bills of lading, and to believe that such 90-day provision would not be enforced, and delayed and induced plaintiff from filing claims and suits earlier than he did.

"Neither said three bales of cotton sued for, marked 'LKWB,' nor said three bales of cotton marked 'DONE,' nor any of them, have ever been delivered.

"Suit was instituted by the plaintiff upon the claims for the three bales of cotton marked 'LKWB,' and for the three bales of cotton marked 'DONE,' before the expiration of two years from the date of the breach of said contracts of carriage, as stipulated therein.

"The value of the six bales of cotton lost was $365.67, which, with interest thereon, amounted to $411, the amount for which judgment was rendered. The payment to Gussoni & Co. for the three bales of cotton marked 'LKWB' was without authority; the same being then the property of Langbehn by transfer of the bill of lading, of which defendant had notice. It was agreed that plaintiff had been paid for the ten bales of 'EKT' cotton, and that part of the cause of action, as set up in the petition, is eliminated."

[1] By its first, second, and third assignments of error, appellant complains of the action of the trial court in overruling its plea of privilege. The correctness of this ruling rests upon the construction of the following provision of the statute: "That whenever any passenger, freight, baggage or other property has been transported by two or more railroad companies, express companies, steamship or steamboat companies, transportation companies or common carriers of any kind or name whatsoever, or by any assignee, lessee, trustee or receiver thereof, or partly by one or more such companies, or common carriers, and partly by one or more assignee, lessee, trustee or receiver thereof operating or doing business as such common carriers in this state, or having an agent or representative in this state, suit for damage or loss or for any other cause of action arising out of such carriage, transportation or contract in relation thereto may be brought against any one or all of such common car-

riers, assignees, lessees, trustees or receivers so operating or doing business in this state, or having an agent or representative in this state, in any court of competent jurisdiction in any county in which either of such common carriers, assignees, lessees, trustees or receivers operates or does business, or has an agent or representative; provided, however, that if damages be recovered in such suits against more than one defendant, not partners in such carriage, transportation or contract, the same shall on request of either party be apportioned between the defendants, by the verdict of the jury, or, if no jury is demanded, then by the judgment of the court." Acts 1905, p. 29; Acts 26th Legislature, p. 214.

Construing the provisions of the act of 1899, which is substantially the same as the act of 1905, the Court of Civil Appeals of the Third District held that in case of a contract for through transportation over two or more railroads suit may be brought against any one or all of such railroad companies in any county in which either of such railroads extend or is operated, without joining as a defendant the company whose line extended into the county where the suit was brought, or which had a local agent or its principal office in such county. T. & P. Ry. Co. v. Middleton, 27 Tex. Civ. App. 481, 65 S. W. 378.

In A., T. & S. F. Ry. Co. v. Forbis, 35 Tex. Civ. App. 255, 79 S. W. 1075, M., K. & T. Ry. Co. v. Bumpas, 38 Tex. Civ. App. 410, 85 S. W. 1047, and A., T. & S. F. Ry. Co. v. Waddell Bros., 40 Tex. Civ. App. 110, 88 S. W. 392, it was held otherwise, upon the authority of T. & P. Ry. Co. v. Lynch, 97 Tex. 28, 75 S. W. 486. We do not understand the latter case as so holding; but, however that may be, we regard the decision in M., K. & T. Ry. Co. v. Blanks, 103 Tex. 195, 125 S. W. 312, as decisive of the question here presented. After quoting the language of section 1 of the act of 1905, the Supreme Court says: "Now, it is to be observed that the language is not that suit may be brought against all of such common carriers, but is that it may 'be brought against any one or all of such common carriers.' Now 'any one,' being used in the singular sense, we think there could have been no doubt as to the construction. It follows that a principal object of the statute was to fix the venue of such suits; and we think that it is fixed in such explicit terms that its meaning cannot be mistaken. In other words, the statute says that either company may be sued in any court which has jurisdiction ordinarily over the other company or companies. In case of such plain language we do not feel at liberty to disregard it."

The assignments of error are therefore overruled.

By its fourth and fifth assignments of error appellant complains of the judgment as to the three bales of cotton marked "DONE," on the ground that, under the facts, plaintiff's claim was barred both by the two-year statute of limitation and by the terms of the contract, which provided, in substance, that, unless suit was brought within two years of the accrual of the cause of action, it should be barred.

[2] Appellant's contention is that the cause of action accrued upon the expiration of a reasonable time for the delivery of the cotton after shipment, under ordinary conditions affecting the transportation, and without regard to the unusual and extraordinary conditions shown by the evidence to have existed, and which delayed such delivery until a date within two years of the institution of the suit. It is appellant's contention in this connection that these unusual conditions were not brought to the notice of the shipper at the time the cotton was received for transportation, and therefore did not affect the accrual of the cause of action. This does not apply to the three bales of "LKWB" cotton, shipped April 24, 1907. The contract limitation of two years was valid. R. S. art. 3378; Suggs v. Insurance Co., 71 Tex. 581, 9 S. W. 676, 1 L. R. A. 847; Railway Co. v. Trawick, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494.

[3] There being no time provided in the contract for delivery, appellant was required to transport and deliver in a reasonable time. The action is for the value of the cotton as for conversion, not for mere delay in transportation. The question is: When did the cause of action for such conversion occur? The law on this point is thus stated in Hutchinson on Carriers (section 328): "And though the carrier may delay ever so long, the owner cannot charge him with a conversion, or for the value of the goods, if they are safely kept, unless they have been demanded of the carrier and their delivery refused." It is further said as to reasonable time for delivery: "What is a reasonable time must be determined by the length of the journey, the mode of conveyance, the weather, the state of the roads, the season of the year, the nature of the goods, the amount of business, if from any cause there should be an unusual temporary influx of freight, and any other circumstance which may properly be taken into consideration by a jury in finding whether the carrier has been guilty of unnecessary and improper delay; for the question must always be one of fact."

We are of the opinion that under the facts of this case, as found by the trial court, plaintiff's cause of action did not accrue more than two years before the institution of the suit; and the trial court did not err in so holding. The trial court found, as a conclusion of fact, that the suit was institut-

ed "before the expiration of two years from the date of the breach of said contract of carriage."

The assignments are overruled.

[4] By its sixth and seventh assignments appellant complains that the trial court erred in not rendering judgment in its favor, because the uncontradicted evidence showed that no claim in writing on account of the loss of the cotton was given, as required by the contract, before the expiration of 90 days after the accrual of the claim, as stipulated in the bill of lading. The trial court found that this stipulation in the bill of lading was, under the facts of this case, unreasonable; and it appears to us that, considering the uncertainty as to when the cause of action for conversion of the cotton accrued, this was, not error. But the assignment must be overruled for another reason. The stipulation in the bills of lading is as follows: "That no suit or action against the Texas & Pacific Railway Company, or any breach for damages arising from any breach of this contract, or injury to or loss or destruction of said cotton shall be sustained in any court unless notice in writing, distinctly setting forth the claim, shall be given to the nearest or any other convenient local agent of said Texas & Pacific Railway Company before the expiration of ninety days from the date of accrual of such claims."

Under the authority of Taber v. Western Union Telegraph Co. (Sup.) 137 S. W. 106, 34 L. R. A. (N. S.) 185, by our Supreme Court, it must be held that the stipulation was void, under article 3379, R. S. It was held in that case that a stipulation requiring such claim to be made "within ninety days" must be construed to mean "before the expiration of ninety days," and was void. "The statute gives the claimant 90 days as the shortest time to which he may be prescribed by the contract in presenting his claim for damages, and any abridgment of that right annuls the contract." Under the clause of the present contract, the plaintiff was required to present his claim not later than some time during the ninetieth day after the accrual of the claim. He must do this in order to do so before the expiration of the 90 days. This does not give him the full 90 days provided by the statute. Smith v. I. & G. N. R. R. Co., 138 S. W. 1075.

We have carefully examined the several assignments of error and conclude that none of them presents sufficient grounds for reversal of the judgment; and it is therefore affirmed.

Affirmed.

### On Motion for Rehearing.

[5] Upon further consideration of this case, upon motion for rehearing, we have concluded that we were in error in holding that the claim for the value of the three bales of cotton marked "DONE" was not barred by the two-year limitation provided in the shipping contract or bill of lading. We do not find it necessary to decide whether the two or four year statute applies to this case, as we have held, correctly we think, in the opinion that the provision in the contract with regard to the time within which such an action should be instituted is valid and enforceable. The decision of the question depends upon when this cause of action accrued. The contract provided for immediate shipment, and the carrier was bound to transport and deliver the property within a reasonable time; no time for such delivery being specified. After the lapse of a reasonable time for such delivery, the property not being delivered, the shipper had a right to treat such breach of contract as a conversion and bring suit for the value of the cotton. If the cotton was tendered to the shipper before the trial, this would have satisfied the demand for its value; and the shipper would then be entitled, upon proper amendment of his petition, to recover damages for the delay. In determining what was a reasonable time for the transportation and delivery of this "DONE" cotton, we think that appellant's contention must be sustained that the extraordinary condition found to have existed, no notice of which was given to the shipper at the time of shipment, cannot be taken to affect or enlarge the time of delivery, under the contract, beyond the time allowed under usual or ordinary conditions. Texas Central R. R. Co. v. Hannay-Frerichs Co., 142 S. W. 1167; M., K. & T. Ry. Co. v. Stark Grain Co., 103 Tex. 542, 131 S. W. 410; T. & P. Ry. Co. v. Felker, 40 Tex. Civ. App. 604, 90 S. W. 531.

[6] The cotton was delivered to the carrier, as shown by the bill of lading No. 75, on October 11, 1906. The trial court finds that the "average time," by which we understand was meant reasonable time, for delivery of this cotton was from 10 days to 3 weeks. Taking the longest period named, 21 days, this reasonable time for transportation of the three bales from Merkel and delivery at Galveston expired on November 2, 1906. The plaintiff's cause of action then accrued, and became barred, under the contractual limitation, two years after that date, or November 2, 1908. This action was begun by filing of the original petition on February 11, 1911, two years and three months, and more, after the cause of action accrued.

The trial court further found as a fact that the average or reasonable time for such transportation and delivery during the season of 1906–07, when the extraordinary conditions of congestion of traffic existed, was from 30 to 90 days. Taking the longest time of 90 days from the date of the bill of lading, October 11, 1906, this reasonable time expired January 11, 1907. The plaintiff's cause of action then accrued, regardless of

the doctrine of Railway Co. v. Hannay-Frerichs Co., and other cases, supra, and was barred when this suit was filed, under the contractual limitation provided. The court does add that the last of the lot of cotton of which these three bales was a part was delivered February 19, 1907; but we cannot regard this as contradictory of the finding as to a reasonable time required for such carriage and delivery, or that such reasonable time extended to February 19th. It seems clear to us, under the findings of fact of the court and the law as stated in the Hannay-Frerichs Case, supra, and others cited, that the cause of action herein set up and adjudicated, as far as concerns the three bales of "DONE" cotton, accrued more than two years before the filing of the petition, and was barred; and that the trial court should have so held.

[7] The finding of the trial court that this suit "was instituted before the expiration of two years from the date of the breach of said contract of carriage, as stipulated therein," is, in fact, a conclusion of law, and an erroneous conclusion from the facts found, and ought not to be allowed to control the clear and specific findings of fact as to the date of the breach of the contract by the failure to deliver within a reasonable time. There is nothing in the correspondence alluded to by appellee that would prevent the running of the limitation or relieve him of the obligation to sue, as herein pointed out.

Our conclusion is that the motion should be granted, in so far as concerns the judgment for the value of the three bales of cotton marked "DONE," and that as to the value of this cotton judgment should be here rendered that plaintiff take nothing; and it is so ordered. This does not affect the judgment for the value of the other cotton, shipped April 24, 1907, which is affirmed.

As to the other questions decided, we adhere to our original opinion. The costs of this appeal and motion will be adjudged against appellee. The judgment for cost of the trial court is not disturbed.