PECOS & N. T. RY. Co. et al. v. MORRISON. (No. 646.)

(Court of Civil Appeals of Texas. Amarillo. July 4, 1914. On Motion for Rehearing, Oct. 10, 1914.)

1. CARRIERS (§ 218*)—TRANSPORTATION OF LIVE STOCK—LIMITED LIABILITY—STATUTES.

The statute forbidding common carriers to limit or restrict their common-law liability in any manner, and making any special agreement in contravention thereof void, applies to the transportation of live stock; and hence a contract, attempting to relieve a carrier from liability for injuries to hogs from overheating, due to the carrier's negligence in failing to flush the hogs and cars with water before they become overheated, was invalid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674-696, 927, 928, 933-949; Dec. Dig. § 218.*]

2. CARRIERS (§ 215*) — TRANSPORTATION OF LIVE STOCK—COMMON-LAW LIABILITY.

With the exception provided by Rev. St. 1895, art. 326 (now Rev. St. 1911, art. 714), authorizing a carrier to contract that the shipper shall feed and water his live stock during transportation, and the common-law exceptions to liability where loss occurs from act of God, act of the owner, the proper vice of the animals, or the public enemy, for which the carrier is not responsible, it is an insurer of the safe transportation of animals delivered to it for carriage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 923; Dec. Dig. § 215.*]

3. CARRIERS (§ 211*) — TRANSPORTATION of LIVE STOCK—DAMAGES—HOGS—OVERHEATING—"FEED AND WATER."

Rev. St. 1895, art. 326 (now Rev. St. 1911, art. 714), provides that a carrier conveying live stock must feed and water the same during transit and until the same is delivered to the consignee, unless otherwise provided by a special contract. Held, that the words "feed and water" refer to the internal necessities of the animal as sustenance, and not to external applications, as an avoidance of injury produced by climatic conditions or unventilated cars; and hence a provision in a contract for the ship-

ment of hogs, requiring the shipper to feed and water the hogs, did not relieve the carrier from the duty to flush the cars and hogs if necessary to prevent injury from overheating.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928; Dec. Dig. § 211.*

For other definitions, see Words and Phrases, Second Series, Water.]

**4. APPEAL AND ERROR (§ 1050*)—RULINGS ON EVIDENCE—PREJUDICE.**

Since a carrier engaged in shipping hogs was under a common-law duty to drench the hogs with water en route to prevent injury from overheating, and damage resulted from a failure to perform such duty, the carrier was not prejudiced by evidence that plaintiff directed the agent accepting the hogs on behalf of the carrier to instruct the carrier's conductors to see that the hogs were watered and drenched en route, when necessary.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from Hale County Court; W. B. Lewis, Judge.

Action by T. W. Morrison against the Pecos & Northern Texas Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed. Rehearing denied.

Madden, Trulove & Kimbrough, of Amarillo, for appellants. Graham & Graham and Mathes & Williams, all of Plainview, for appellee.

HENDRICKS, J. The appellee Morrison sued the appellants, the Pecos & Northern Texas Railway Company and the Texas & Pacific Railway Company, as common carriers, alleging damages on account of the death of a certain number of hogs in a two car load shipment from Plainview to Ft. Worth, Tex., asserting negligence of the railway company in failing to flush the hogs and the cars in which they were transported, as became necessary to prevent them from being overheated, also claiming injury to the live hogs arriving at destination. The contract of shipment, executed by appellee's agent, after the hogs were loaded at Plainview, preparatory to transportation, contained the usual stipulation in contracts of this character as to the shipment of live stock, and in this instance, to the effect that the shipper, at his own risk and expense, would properly care for, feed, water, and attend to said hogs in the pens of the company while awaiting shipment, and during the whole period of transportation, with the usual additional stipulation that the carrier would not be liable for any loss or damage accruing to the shipment while in the shipper's charge. The appellants contend that the shipper was bound by this contract, and assert, though it may have been their duty to have provided reasonable facilities for the purpose of affording the shipper the means of administering to the welfare of the hogs, however, that the duty of the carrier extended no further than the proper transpor-

tation of the hogs to destination, and further contend that the record, being devoid of any testimony that they assumed the care of the hogs, extraneous from the train service, they are not liable; the swine having a shipper in charge. Appellee replies that the contract is void; that the hogs were delivered to the initial carrier, and accepted by it for transportation, upon an oral contract of shipment before any written contract was mentioned, prepared, or signed, and was without consideration, also claiming that the covenants in the contract were based, as a consideration, upon a reduced freight rate which was never given by the carrier; to that contention the carrier answered that appellee was an experienced shipper over the same railroads for years, and that in each instance he signed, or authorized the execution of, similar contracts containing the same provisions, and knew that the written contracts only, and not oral contracts, were the basis of free transportation for the party accompanying the shipments; that when the hogs were delivered, each of the parties, in its preliminary arrangements, was acting in an habitual method, with the view and expectation, carrying with it an implied understanding that the usual contracts of shipment were to be executed and issued expressing the intentions and engagements of the parties. The evidence bears out this latter theory of appellants, and, if the contract under consideration were valid, and required the shipper to assume the duty, the failure of which injured the swine, and if the law permitted the carrier to contract this duty away and burden the shipper with the same, we would be prone to sustain the seventh assignment of error, criticizing the seventh paragraph of the charge of the court as containing injurious error—the trial court made the validity of the written contract of shipment depend upon some new consideration, distinct from the oral contract, disregarding the feature that such written contract may have been contemplated by the parties from the inception of the transaction.

The record suggests that the cause of the death of the hogs en route, and the injury to the live hogs arriving at destination, was an overheated condition of the animals, and which could have been avoided by an application of water over the hogs at a time before they became heated, or their condition could have been alleviated by a flooding of the car, and bedding underneath the hogs, and which was not done in either instance. Two of the trainmen testified to the effect that they desired to flush the hogs and the car, but that Sterns, the shipper's agent in charge, refused to permit it to be done, which issue was charged by the court to the jury, but which contention the jury refused to accept. If the issue could have been maintained, appellants would have establish-

ed one of the exceptions to the common-law rule that a common carrier is an insurer—the fault of the shipper—and should have been exonerated. The testimony was that it was the failure of external application of water, which was the negligence producing the injury, and not the failure to water the hogs internally; and a proper consideration of the fourth paragraph of the charge of the court argues that he submitted the issue of an external application, and not a failure to give the hogs water as sustenance, as the negligence in this respect, instructing the jury, "and (if) you further find that said failure on the part of defendants was caused by their negligence and carelessness in not properly flushing said car and said hogs, then you will find for the plaintiff the actual market value," etc.

[1] Our statute, providing, in substance, that common carriers shall not limit or restrict their liability, as it exists at common law, in any manner whatever, and that any special agreement made in contravention is void, precludes the defense that the railroads in this case were exonerated by special contract from the duty of avoiding the injury to the hogs.

The transportation of live stock comes within the purview of this statute. Railway Co. v. Trawick, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494; Railway Co. v. Harris, 67 Tex. 166, 2 S. W. 574. Justice Stayton said in the Trawick Case, "Under the statute of this state, a railway company must receive and transport, and, after receiving, *it becomes the insurer of them*, as in the case of other property, which it is bound to transport, against loss from any cause, except," the court naming the familiar exceptions. It is true that at common law a contract reasonable in its terms could be made, limiting the carrier's liability, by limiting its duty and shifting the duty to the shipper; but in intrastate shipments a special contract cannot shield the carrier, as Justice Stayton further expresses it, "from any liability that would have existed had it [the contract] not been made"; and the decision further expressly holds that, "the duties and liabilities imposed on common carriers are inseverable," and further clearly implies that an attempted transition, or shifting of duties imposed by the common law, by an attempted special contract, is a limitation or restriction of liability specifically invalidated by the statute. If, within this state, "A railroad company must receive and transport live animals as other property, and, after receiving, it becomes an insurer of them, as in the case of other property which it is bound to transport," we will assume, without argument, that it would be a common-law duty of the carriers in this instance to at least exercise that care, commensuate with the character of the property transported, to avoid loss and injury to the hogs.

[2] We are not overlooking the right of

a carrier to specially contract that the shipper shall feed and water his live stock during transportation, which is expressly recognized by R. S. 1895, art. 326 (now 714), and the extent to which the common-law duty and liability of a common carrier may be shifted and restricted. However, with this exception, and the common-law exception, where the loss occurs from the act of God, the act of the owner, the "proper vice" of the animals, or the public enemy, the common-law duty of the common carrier is unrestricted.

[3] The last article prescribed that:

"It shall be the duty of a common carrier who conveys live stock of any kind to feed and water the same during the time of conveyance and until the same is delivered to the consignee, * * * unless otherwise provided by special contract," etc.

The statute evidently meaning that it is the duty of the carrier to sufficiently feed and water the stock in transportation unless the "feeding and watering" of the same is otherwise provided by agreement; and we do not believe that an external application of water for the purpose of preventing an overheated condition of the hogs is a watering of the hogs intended by that statute, which the carrier could shift to the shipper by special contract. It means the internal necessities of the animal as sustenance, and not an external application as an avoidance of the injury produced by climatic conditions, or unventilated cars, if such latter case were to arise; neither do we think that the equivalent expression in the contract (excluding the general expression of the care of the hogs by the shipper, providing that the shipper shall feed and water the animals during the period of transportation, means an external application for the purposes indicated. Justice Breese, in the case of Ill. Cent. R. R. Co. v. Adams, 42 Ill. 487, 92 Am. Dec. 85, said:

"The phrase 'feeding and watering,' as used in the contract, has reference alone, as we understand the contract, to the ordinary sustenance such animals require in the course of transportation, while the negligence complained of, and for which the railroad company is sought to be charged, is the application of water externally to hogs confined in cars, causing them to become much heated, and from which speedy death ensues if they are not promptly relieved by this application."

As to the particular expressions used in the contract and in the statute, we think the meaning is the same. The susceptibility of the hogs to overheating, and the danger of death resultant therefrom, is, of course, not a common-law exception within the term "proper vice" of the animal or inherent weakness, over which the carrier would have no control. Hence if the character of duty and the liability of the common carrier correlative thereto is not one that the Legislature has permitted it to restrict and limit, then the statute imposing the common-law liability has full force:

"The law puts the risk upon the common carrier, and not upon the shipper, and in this state, at least, it must remain there until the Legislature relieves against it in favor of the carrier. * * * In this state we are bound to hold to the common-law principle. Our Legislature has so declared, * * * and we are not at liberty to go beyond it." Ry. Co. v. Levi (Sup.) 12 S. W. 677.

As to the proximate cause of the injury to the hogs, and as to the duty of the common carrier to avoid that injury, and as to the issue upon which the liability of the common carrier was evidently determined, the drenching of the hogs, or the car in which the same were shipped, the contract attempted to be invoked by the railway company, as to the duty of the shipper to care for and attend to the hogs during the transportation of same, was void and in violation of the statute, as a restriction of the duty and liability of the carrier, and the several assignments in appellants' brief bearing upon this question are overruled.

The appellants assign that:

"The court erred in admitting over the objections of this defendant the testimony of the plaintiff, Morrison, in reference to the directions and instructions given by him to the agent, Klinger, at Plainview, Tex., in reference to instructing the conductor to see that plaintiff's hogs were watered and drenched en route when necessary."

Under the same assignment the appellants include another specification of error, complaining that the trial court erred in refusing to give the following special charge:

"The court charges you not to consider the testimony of the plaintiff, T. W. Morrison, that he requested the agent, Klinger, to instruct the conductors en route to flush said hogs."

[4] Appellants' first proposition is that they "were not bound by instructions * * * to the conductors, in reference to watering and drenching said hogs when necessary"; and the second proposition is, "The plaintiff having entered into a valid written contract for the shipment of his hogs, the testimony complained of in the foregoing assignment was * * * inadmissible for any purpose." It is argued that a local agent for a railway company, in the absence of express authority, has no right to bind his company concerning matters and transactions beyond his own station, as well as outside of his department of service, citing, among other cases, Railway Co. v. Belcher, 88 Tex. 549, 32 S. W. 518, and Railway Co. v. Jackson & Edwards, 99 Tex. 343, 89 S. W. 968. Waiving the criticism of appellee that there is a double specification of error comprehended within one assignment, if we were to decide that the testimony was not admissible, we are unable to see any injury to appellant. If Klinger had instructed the "conductor to see that plaintiff's hogs were watered and drenched en route, when necessary," said instruction would have been no more than the obligation imposed by law upon the carriers with reference to the care of the hogs. If the common-law duty is imposed upon the carrier to care for the hogs, and could not have been shifted to the shipper's agent, this record is conclusive that the hogs were not drenched from Plainview to Ft. Worth, and that the injury, the death of some of the hogs and the depreciation in others, occurred. As stated, the jury solved the question against the carriers that the shipper's agent was at fault in not permitting the trainmen to drench the hogs en route, and if the contract does not apply to that issue as a proximate cause of the injury (the carrier, legally speaking, proven to have been at fault), such testimony is harmless.

The fourth assignment of error, criticizing the fourth paragraph of the charge of the court, is unavailable as against the objection presented—the charge is not upon the weight of the testimony. We have attempted to carefully consider all assignments, and conclude an affirmance of the cause.

Affirmed.

On Motion for Rehearing.

Appellants, in their motion for rehearing, announce that:

"The common law, as recognized by our courts, is the same as recognized by all the courts of our country, and in reason there should not be a different application of the common law upon this subject in interstate shipments from that of intrastate shipments."

The difference is, in intrastate shipments, that any limitation of common-law liability, or of the common carrier's duty, by any special agreement between the carrier and shipper, is declared void by special statute. If it were the duty of the carrier at common law to exercise ordinary care to drench the hogs during transportation, then the statute, as Justice Stayton expresses it in the Trawick Case, cited in the main opinion, "deprives such carrier of the right to limit its liability by contract, even as to matters which it might legally contract under common law. The common-law duties and liabilities, and not those duties and liabilities as they may be affected by contracts lawfully under the common law, are the duties and liabilities of common carriers under the statutes of this state, and they cannot be restricted or limited by any contract or agreement whatever, in cases to which the statute is applicable." Except the statute providing for special contracts between the shipper and the carrier, permitting the transition of duty to the shipper to feed and water live stock, there is no other statute which would permit by contract, in intrastate shipments, an assumption of the burden to care for such live stock during the period of transportation in any other manner. Surely the external application of water to this character of live stock to prevent overheating would be, under certain conditions, a common-law duty. If so, such a duty cannot be contracted away, though such a con-

tract may have been lawful under the common law, unless article 741 would permit a special contract between the parties for that purpose, which is clearly not broad enough in its scope.

The motion for rehearing is, in all things, overruled.